# Exhibit 2

1   STEPTOE & JOHNSON LLP
    201 East Washington Street, Suite 1600
2   Phoenix, Arizona  85004-2382
    Telephone: (602) 257-5200
3   Facsimile: (602) 257-5299

4   Erin E. Bradham (022827)
    ebradham@steptoe.com
5   Alexander J. Egbert (033510)
    aegbert@steptoe.com
6
    Attorneys for Defendant Employers Mutual Casualty
7     Company dba EMC Insurance Companies

8

9                    **UNITED STATES DISTRICT COURT**

10                          **DISTRICT OF ARIZONA**

11  Raygarr, LLC, an Arizona Limited Liability          No.
    Company,
12
                       Plaintiff,
13                                                      **LOCAL RULE 3.6(b)**
            vs.                                         **VERIFICATION**
14
    Employers Mutual Casualty Company dba
15  EMC Insurance Companies, a foreign
    corporation,
16
                       Defendant.
17

18          Undersigned counsel verifies that the attached documents are true and correct

19  copies of all pleadings and other documents filed in the state court proceeding prior to

20  Defendant's filing of this Notice of Removal.

21          DATED this 11th day of May, 2018.

22                                      STEPTOE & JOHNSON LLP

23

24                                      By
                                           Erin E. Bradham
25                                         Alexander J. Egbert
                                           201 East Washington Street, Suite 1600
26                                         Phoenix, Arizona 85004-2382

27                                      Attorneys for Defendant Employers Mutual
                                        Casualty Company dba EMC Insurance
28                                      Companies

**In the Superior Court of the State of Arizona**
**In and For the County of** Pima

Case Number _____

## CIVIL COVER SHEET- NEW FILING ONLY
(Please Type or Print)

Plaintiff's Attorney Patrick J Lopez

Attorney Bar Number 019183, AZ

Plaintiff's Name(s): (List all)

RAYGARR, LLC

*FILED*
*TONI L. HELLON*
*CLERK, SUPERIOR COURT*
4/5/2018 11:50:27 AM
BY: ADAM WALKER
DEPUTY

*Delivery Date: April 05, 2018 11:50 AM MST*

*Keyword / Matter #: 78007-3 Raygarr v. Employers Co*
Case No. C20181666
HON. RICHARD E GORDON

Plaintiff's Address:

259 N. MEYER AVENUE, TUCSON AZ 85701

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All) EMPLOYERS MUTUAL CASUALTY COMPANY, DBA EMC
INSURANCE COMPANIES

(List additional defendants on page two and/or attach a separate sheet)

EMERGENCY ORDER SOUGHT: ☐ Temporary Restraining Order   ☐ Provisional Remedy   ☐ OSC
☐ Election Challenge   ☐ Employer Sanction ☐ Other _____
(Specify)

☐ RULE 8(h) COMPLEX LITIGATION APPLIES. Rule 8(h) of the Rules of Civil Procedure defines a "Complex Case" as civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties.
(Mark appropriate box on page two as to complexity, **in addition** to the Nature of Action case category).

☐ THIS CASE IS ELIGIBLE FOR THE COMMERCIAL COURT UNDER EXPERIMENTAL RULE 8.1. (Maricopa County only.) Rule 8.1 defines a commercial case and establishes eligibility criteria for the commercial court. Generally, a commercial case primarily involves issues arising from a business contract or business transaction.  However, consumer transactions are not eligible.  A consumer transaction is one that is primarily for personal, family or household purposes. **Please review Rule 8.1 for a complete list of the criteria**. See http://www.superiorcourt.maricopa.gov/commercial-court/. You must check this box if this is an eligible commercial case.  **In addition, mark the appropriate box below in the "Nature of Action" case category**. The words "eligible for commercial court" must appear in the caption of the original complaint.

## NATURE OF ACTION
(Place an **"X"** next to the **one** case category that most accurately describes your primary case.)

**TORT MOTOR VEHICLE:**
☐ Non-Death/Personal Injury
☐ Property Damage
☐ Wrongful Death
**TORT NON-MOTOR VEHICLE:**
☐ Negligence
☐ Product Liability – Asbestos
☐ Product Liability – Tobacco
☐ Product Liability – Toxic/Other
☐ Intentional Tort

☐ Property Damage
☐ Legal Malpractice
☐ Malpractice – Other professional
☐ Premises Liability
☐ Slander/Libel/Defamation
☐ Other (Specify) _____
**MEDICAL MALPRACTICE:**
☐ Physician M.D.    ☐ Hospital
☐ Physician D.O    ☐ Other

*AZturboCourt.gov Form Set #2581184*

November 10, 2016                    Page 1                    AOCCV10F-010117

**CONTRACTS:**
- ☐ Account (Open or Stated)
- ☐ Promissory Note
- ☐ Foreclosure
- ☐ Buyer-Plaintiff
- ☐ Fraud
- ☒ Other Contract (i.e. Breach of Contract)
- ☐ Excess Proceeds-Sale
- ☐ Construction Defects (Residential/Commercial)
  - ☐ Six to Nineteen Structures
  - ☐ Twenty or More Structures

**OTHER CIVIL CASE TYPES:**
- ☐ Eminent Domain/Condemnation
- ☐ Eviction Actions (Forcible and Special Detainers)
- ☐ Change of Name
- ☐ Transcript of Judgment
- ☐ Foreign Judgment
- ☐ Quiet Title
- ☐ Forfeiture
- ☐ Election Challenge
- ☐ NCC- Employer Sanction Action (A.R.S. §23-212)
- ☐ Injunction against Workplace Harassment
- ☐ Injunction against Harassment
- ☐ Civil Penalty
- ☐ Water Rights (Not General Stream Adjudication)
- ☐ Real Property
- ☐ Special Action against Lower Courts
  (See lower court appeal cover sheet in Maricopa)
- ☐ Immigration Enforcement Challenge (A.R.S. §§1-501, 1-502, 11-1051)

**UNCLASSIFIED CIVIL:**
- ☐ Administrative Review
  (See lower court appeal cover sheet in Maricopa)
- ☐ Tax Appeal
  (All other tax matters must be filed in the AZ Tax Court)
- ☐ Declaratory Judgment
- ☐ Habeas Corpus
- ☐ Landlord Tenant Dispute- Other
- ☐ Declaration of Factual Innocence (A.R.S. §12-771)
- ☐ Declaration of Factual Improper Party Status
- ☐ Vulnerable Adult (A.R.S. §46-451)
- ☐ Tribal Judgment
- ☐ Structured Settlement (A.R.S. §12-2901)
- ☐ Attorney Conservatorships (State Bar)
- ☐ Unauthorized Practice of Law (State Bar)
- ☐ Out-of-State Deposition for Foreign Jurisdiction
- ☐ Secure Attendance of Prisoner
- ☐ Assurance of Discontinuance
- ☐ In-State Deposition for Foreign Jurisdiction
- ☐ Eminent Domain– Light Rail Only
- ☐ Interpleader– Automobile Only
- ☐ Delayed Birth Certificate (A.R.S. §36-333.03)
- ☐ Employment Dispute- Discrimination
- ☐ Employment Dispute-Other
- ☐ Other (Specify) _____

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

- ☐ Antitrust/Trade Regulation
- ☐ Construction Defect with many parties or structures
- ☐ Mass Tort
- ☐ Securities Litigation with many parties
- ☐ Environmental Toxic Tort with many parties
- ☐ Class Action Claims
- ☐ Insurance Coverage Claims arising from the above-listed case types
- ☐ A Complex Case as defined by Rule 8(h) ARCP

Additional Plaintiff(s)

_____

_____

Additional Defendant(s)

_____

_____

Attachment Page __1__ (of __1__ )

To Civil Cover Sheet

**ATTORNEY INFORMATION:**

ATTORNEY FILING - PRIMARY ATTORNEY:

Patrick J Lopez

Bar Number: 019183, Issuing State: AZ

Law Firm: MESCH CLARK ROTHSCHILD

Address: 259 N. MEYER AVENUE

TUCSON, AZ 85701

Telephone Number: (520) 624-8886

Email: plopez@mcrazlaw.com

ATTORNEY #2

MELVIN C COHEN

Bar Number: 003728, Issuing State: AZ

Law Firm: MESCH CLARK ROTHSCHILD

Address: 259 N. MEYER AVENUE

TUCSON, AZ 85701

Telephone Number: (520)624-8886

**ATTACHED DOCUMENTS LIST:**

Summons - Defendant #1

Complaint

AZturboCourt.gov Form Set #2581184

If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.

Person/Attorney Filing: Patrick J Lopez
Mailing Address: 259 N. MEYER AVENUE
City, State, Zip Code: TUCSON, AZ 85701
Phone Number: (520) 624-8886
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 019183, Issuing State: AZ
Attorney E-Mail Address: plopez@mcrazlaw.com

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PIMA

RAYGARR, LLC
Plaintiff(s),

Case No. C20181666

HON. RICHARD E GORDON

V.

**SUMMONS**

EMPLOYERS MUTUAL CASUALTY COMPANY,
DBA EMC INSURANCE COMPANIES
Defendant(s).

To: EMPLOYERS MUTUAL CASUALTY COMPANY, DBA EMC INSURANCE COMPANIES

WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.

1. A lawsuit has been filed against you. A copy of the lawsuit and other related court paperwork has been served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Office of the Clerk of the Superior Court, 110 West Congress Street, Tucson, Arizona 85701 or electronically file your Answer through AZTurboCourt at www.azturbocourt.gov.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons. Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If the papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS, not counting the day of service.

AZTurboCourt.gov Form Set #2581184

Requests for reasonable accommodations for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of _Pima_____ _April 05, 2018_____.

*Toni L. Hellon*
Clerk of the Superior Court

By: *Alan Walker* _____
          Deputy Clerk



12/30/2016 CAC

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT
4/5/2018 11:50:27 AM
BY: ALAN WALKER
DEPUTY

Case No. C20181666
HON. RICHARD E GORDON

MESCH CLARK ROTHSCHILD
259 North Meyer Avenue
Tucson, Arizona 85701
Phone:   (520) 624-8886
Fax:     (520) 798-1037
Email: mcohen@mcrazlaw.com
       plopez@mcrazlaw.com

By:     Melvin C. Cohen, #003728
        Patrick J. Lopez, #019183
        78007-8/pjl

Attorneys for Plaintiff

# ARIZONA SUPERIOR COURT

# PIMA COUNTY

| | |
|---|---|
| RAYGARR, LLC, an Arizona limited liability company, | Case **No.:** |
| Plaintiff, | **COMPLAINT** |
| v. | |
| EMPLOYERS MUTUAL CASUALTY COMPANY dba EMC INSURANCE COMPANIES, a foreign corporation, | **(Assigned to the Hon._____)** |
| Defendant. | |

Plaintiff, Raygarr, LLC ("Raygarr"), for its Complaint against Defendant Employers Mutual Casualty Company doing business as EMC Insurance Companies ("EMC"), alleges:

1.      Raygarr is an Arizona limited liability company that at all times relevant to this Complaint was authorized to do business in Pima County, Arizona, and was doing business in Pima County, Arizona.

2.      EMC is a foreign corporation authorized to do business in Arizona and that at all times relevant to this Complaint was authorized and was doing business in Pima County, Arizona.

3.      Jurisdiction and venue are proper in this Court.

4.      On or about February 18, 2014, EMC issued a Commercial General Liability Policy #5D0-74-23---15 ("CGL") to Raygarr as Insured, and Raytheon Missile Systems Company ("Raytheon") as an additional insured, which was effective for the period 2/22/14 thru 2/22/15.

5.      On or about February 18, 2014, EMC issued an Umbrella Policy #5J0-74-23---15 ("Umbrella") to Raygarr as Insured, and Raytheon as an additional insured, which was effective for the period 2/22/14 thru 2/22/15.

6.      On or about July 28, 2014, Raygarr signed Purchase Order No. 4200942454 with Raytheon to perform as a general contractor and provide all the labor, materials and equipment to renovate and upgrade bathrooms in Raytheon's Building 842 (the "Building 842 Project").

7.      Raygarr provided the CGL and Umbrella policies in accordance with Raytheon's Purchase Order.

8.      On or about the morning of September 9, 2014, Raytheon informed Raygarr that a flood incident occurred at Building 842, allegedly caused by the breaking of a number of PVC caps installed by Raygarr's subcontractor, Qualified Mechanical Contractors, resulting in water flooding within Building 842 causing extensive property damage to the Building and the personal property inside it.

9.      On or about September 9, 2014, Raytheon represented to Raygarr that Raygarr was, as general contractor, responsible for the flood incident in Building 842 and demanded Raygarr be responsible for the flood remediation and repairs, including assessing damages, scheduling and coordinating all work, and hiring all subcontractors.

2

10.     On or about September 9, 2014, a representative of Raygarr contacted its insurance broker to put EMC on notice of the flood incident.

11.     Raygarr's broker contacted EMC, and EMC established a claim file and claim number for the flood incident.

12.     EMC assigned the claim to EMC Senior Claims Adjuster Fabian Mireles.

13.     Upon information and belief, Mireles was at all times relevant to this Complaint an employee of EMC.

14.     At all relevant times, Mireles acted within the scope of his employment as a Senior Claims Adjuster for EMC.

15.     Raygarr's insurance broker informed Raygarr that it had contacted EMC, that EMC opened a file and assigned a claim number, and provided Raygarr the contact information for Mireles.

16.     In response to the flood incident, flood remediation contractors Abracadabra and ATI were contacted to provide immediate flood remediation work to remove water and perform other work.

17.     On or about September 10, 2014, flood remediation contractors Abracadabra and ATI approached Raytheon to have Raytheon sign their contracts for the flood remediation services to be provided for Building 842.

18.     Raytheon declined to sign the contracts with Abracadabra and ATI, and informed both Abracadabra and ATI that Raygarr should sign their contracts.

19.     Abracadabra and ATI approached Raygarr and informed Raygarr that Raytheon would not sign the contracts and instead indicated that Raygarr should.

20.     Raygarr did not have the ability to pay the flood remediation costs, which could easily exceed hundreds of thousands of dollars.

21.     Before Raygarr would sign the contracts and contractually obligate itself to Abracadabra and ATI for flood remediation costs, Raygarr informed Abracadabra and ATI

3

1   that it first needed confirmation from its insurance carrier, EMC, that EMC would cover the

2   loss and pay the flood remediation costs.

3        22.    On or about September 10, 2014, Raygarr principle, Ray Garrison

4   ("Garrison"), contacted Mireles to inform EMC that Raygarr was being asked to sign the

5   contracts of the remediation contractors.

6        23.    Garrison told EMC's Mireles that he and Raygarr had no prior experience

7   with insurance claims and no experience with a casualty of this size.

8        24.    Garrison told EMC's Mireles what Raytheon told Raygarr about the cause of

9   the flood and that Raytheon was demanding Raygarr sign the remediation contracts with

10   ATI and Abracadabra, take the lead and perform the remediation and repairs, employ all of

11   the personnel and hire subcontractors to perform the remediation and repairs.

12        25.    Garrison specifically asked Mireles if EMC was going to cover the loss, and if

13   EMC would authorize and provide consent to Raygarr to enter into the contracts with

14   Abracadabra and ATI with the understanding that EMC insurance would pay the costs

15   incurred under those contracts.

16        26.    Garrison asked EMC's Mireles if Raygarr should sign the remediation

17   contracts.  EMC's Mireles told Garrison to proceed with the remediation and repair as

18   demanded by Raytheon, sign the contracts with ATI and Abracadabra, and that the costs for

19   the flood remediation and repairs would be covered by EMC.

20        27.    EMC's Mireles told Garrison that Garrison could tell Raytheon that the flood

21   remediation and repairs would be a covered claim by EMC's CGL and Umbrella policies.

22        28.    Mireles informed Raygarr that the loss was a covered loss, and authorized and

23   consented to Raygarr entering into the contracts with Abracadabra and ATI, and other

24   subcontractors as needed, as well as Raygarr employing its staff to the flood remediation

25   with the understanding that EMC would promptly pay the costs Raygarr was incurring.

26

29.     Based on the representations of EMC's Senior Claims Adjuster Mireles, Raygarr signed the contracts with Abracadabra and ATI for the flood remediation of Building 842.

30.     On September 10, 2014, Raygarr received a letter from EMC acknowledging the claim and assigning a claim number: Z01088125.

31.     Based on the representations of EMC's Senior Claims Adjuster, Mireles, Raygarr used all of its cash, credit and resources to employ its personnel and hire subcontractors to perform the remediation and restoration work for Building 842.

32.     Despite the representations of EMC to Raygarr, EMC refused and failed to pay Raygarr for the costs of the flood remediation and restoration, including the costs incurred by Raygarr for its work, for Abracadabra and ATI, and other subcontractors, causing Raygarr to breach its contracts with Abracadabra and ATI and other subcontractors, causing Raygarr to borrow money to maintain cash flow, and also causing damage to Raygarr's relationship with Raytheon.

33.     As a direct consequence of EMC authorizing Raygarr to sign contracts and perform flood remediation and repairs and then failing to pay Raygarr for Raygarr's performing the Raytheon flood remediation and repair, Raygarr was suspended and then terminated from performing additional work as a general contractor for Raytheon causing damages to Raygarr.

**COUNT ONE:  NEGLIGENT MISREPRESENTATION**

34.     Raygarr re-asserts all prior allegations as if fully set forth herein.

35.     EMC, through its Senior Claims Adjuster Mireles, failed to exercise reasonable care and competence in communicating information to Raygarr.

36.     Mireles, in the course of his business or employment as an EMC Senior Claims Adjuster, provided false information to Raygarr for the guidance of Raygarr in Raygarr's business transactions related to the remediation and restoration of Building 842.

1    37.    Raygarr justifiably relied on the false information provided by Mireles.

2    38.    The misrepresentations of Mireles caused Raygarr to incur damages.

3    39.    The actions of EMC in denying coverage and failing to pay all damages and
4    costs incurred by Raygarr relating to Building 842 flood remediation and restoration,
5    knowing that Raygarr proceeded with the remediation and restoration based on the
6    representations of EMC's Senior Claims Adjuster, were done with evil mind and intent
7    justifying an award of punitive damages.

8                              **COUNT TWO:  NEGLIGENCE**

9    40.    Raygarr asserts all prior allegations as if fully set forth herein.

10   41.    EMC held Mireles out as a Senior Claims Adjuster possessing the special
11   knowledge, skill, or expertise to perform his job responsibilities according to the standards
12   of his profession.

13   42.    EMC, through Mireles, owed a duty to Raygarr to act as a reasonable and
14   prudent Senior Claims Adjuster and to perform his duties in accordance with the standards
15   of his profession.

16   43.    EMC breached its duties owed to Raygarr.

17   44.    EMC's breaches caused Raygarr damages.

18   45.    EMC's actions were done with evil mind and intent justifying an award of
19   punitive damages.

20                         **COUNT THREE:  EQUITABLE ESTOPPEL**

21   46.    Raygarr asserts all prior allegations as if fully set forth herein.

22   47.    EMC informed Raygarr that the loss was a covered loss and directed Raygarr
23   to proceed with the remediation and restoration efforts of Building 842, knowing that
24   Raygarr had no ability to pay unless it had insurance covering the loss.

25   48.    EMC knew or should have known that Raygarr was relying, and did so rely,
26   on the authorization, consent, and direction from EMC before Raygarr would enter into

contracts with flood remediation and restoration subcontractors, and commit its own resources to the flood remediation.

49.     EMC induced Raygarr into believing that the loss was a covered loss and that the costs incurred by Raygarr for its work and the work of the flood remediation and restoration subcontractors under their contracts with Raygarr, would be promptly paid by EMC.

50.     Raygarr justifiably relied on the representations of EMC.

51.     EMC's acts (1) of informing Raygarr that the loss was a covered loss and that Raygarr was authorized by EMC to perform the flood restoration and remediation work with its employees and with subcontractors, and (2) of informing Raygarr that the loss was a covered loss and authorizing and consenting to Raygarr contracting with remediation and restoration contractors, are inconsistent with EMC's later claim that the loss is not a covered loss and that it would not pay all costs incurred by Raygarr.

52.     Raygarr reasonably understood EMC's conduct and representations to mean that EMC would provide coverage under Raygarr's insurance policies and would promptly pay Raygarr all cost incurred by Raygarr for its work and under Raygarr's contracts with subcontractors, including Abracadabra and ATI that Raygarr entered into only after authorization and consent from EMC.

53.     Raygarr reasonably relied in good faith on EMC's representations that the flood remediation and restoration were claims covered by EMC's policies with Raygarr and Raygarr could proceed to hire subcontractors and employ its employees.

54.     EMC negligently induced Raygarr to believe that the loss was a covered loss and that EMC would pay Raygarr all the remediation and restoration costs for Building 842.

55.     Raygarr suffered damages resulting from EMC's later repudiation that the loss was a covered loss and failure and refusal to pay Raygarr's costs incurred.

1    56.    Raygarr was injured by relying on the representations of EMC concerning

2    coverage for the loss.

3    57.    EMC is equitably estopped from denying coverage and paying Raygarr for the

4    remediation and restoration costs for Building 842.

5    **COUNT FOUR:  INSURANCE BAD FAITH/BREACH OF THE**

6    **COVENANT OF GOOD FAITH AND FAIR DEALING**

7    58.    Raygarr asserts all prior allegations as if fully set forth herein.

8    59.    The law implies a covenant of good faith and fair dealing in every contract.

9    60.    One of the benefits that flow from the insurance contracts at issue is Raygarr's

10   expectation that EMC would not wrongfully deprive Raygarr of the very security for which

11   it bargained or expose Raygarr to the catastrophe from which it sought protection.

12   61.    EMC's conduct, authorizing Raygarr to proceed with performing flood

13   remediation and restoration and hiring subcontractors while representing to Raygarr that the

14   costs being incurred by Raygarr were claims which were covered by the EMC insurance

15   policy, caused Raygarr economic damages, including but not limited to lost principle and

16   interest, loss of present and future earnings as a general contractor working for Raytheon,

17   cost of replacement capital to pay subcontractors and Raygarr employees, overhead and

18   profit.

19   62.    But for the representations of EMC in consenting, authorizing, and directing

20   Raygarr to proceed with performing as the general contractor with its employees and

21   entering into contracts for the flood remediation and restoration of Building 842, Raygarr

22   would not have employed its employees and entered into such contracts and contractually

23   obligate itself to payment for the costs incurred.

24   63.    EMC's conduct destroyed the security and/or protection purchased by

25   Raygarr.

26   64.    EMC failed to act honestly.

8

1     65.     EMC failed to act on adequate information.

2     66.     EMC intentionally denied and failed to pay the claim without a reasonable

3 basis.

4     67.     EMC knew that it acted without a reasonable basis.

5     68.     EMC failed to perform an adequate investigation or evaluation to determine

6 whether its action was supported by a reasonable basis.

7     69.     EMC failed to perform an adequate investigation or evaluation before

8 consenting and authorizing Raygarr to enter into contracts.

9     70.     EMC placed paramount importance on its own interest over the interests of

10 Raygarr.

11     71.     EMC failed to give equal consideration to the interest of Raygarr.

12     72.     EMC owed Raygarr a duty to conduct an adequate investigation and act

13 reasonably in evaluating a claim.

14     73.     EMC breached its duties owed to Raygarr.

15     74.     EMC actions jeopardized Raygarr's security under its insurance policies with

16 EMC.

17     75.     EMC breached the implied covenant of good faith and fair dealing implied in

18 its contracts with Raygarr.

19     76.     EMC acted in bad faith.

20     77.     EMC's breach caused Raygarr damages.

21     78.     EMC's conduct was done with evil mind and intent to justify an award of

22 punitive damages.

23              **COUNT FIVE:  BREACH OF CONTRACT**

24     79.     Raygarr asserts all prior allegations as if fully set forth herein.

25     80.     The insurance policies issued by EMC to Raygarr are valid, binding contracts

26 for insurance.

9

81.     Pursuant to the insurance contract, EMC owed duties to Raygarr.

82.     EMC failed to perform duties owed to Raygarr and breached its contract with Raygarr.

83.     EMC's breach was material.

84.     EMC's breach caused Raygarr damages in an amount to be proven at trial.

85.     Raygarr is entitled to an award of attorneys' fees and costs pursuant to the contract and/or A.R.S. § 12-341.01.

**WHEREFORE** Plaintiff respectfully requests that the Court find in favor of Plaintiff, Raygarr on its Complaint and against Defendant, EMC, and enter Judgment in favor of Plaintiff as follows:

A.      That Plaintiff be awarded damages as determined by a jury;

B.      That Plaintiff be awarded punitive damages;

C.      That Plaintiff be awarded pre- and post-judgment interest;

D.      That Plaintiff be awarded its attorneys' fees and costs incurred pursuant to Arizona law;

E.      That the Court award any and all further relief that the Court deems just and proper.

DATED:  April 5, 2018.                    MESCH CLARK ROTHSCHILD


By:   /s/Patrick J. Lopez, #019183
      Melvin C. Cohen
      Patrick J. Lopez
      *Attorneys for Plaintiff*

23O4585.DOCX

10

MESCH CLARK ROTHSCHILD
259 North Meyer Avenue
Tucson, Arizona 85701
Phone:   (520) 624-8886
Fax:   (520) 798-1037
Email: mcohen@mcrazlaw.com
        plopez@mcrazlaw.com

By:   Melvin C. Cohen, #003728
       Patrick J. Lopez, #019183
       78007-8/do

Attorneys for Plaintiff

## ARIZONA SUPERIOR COURT
## PIMA COUNTY

| | |
|---|---|
| RAYGARR, LLC, an Arizona limited liability company, | Case **No.:  C20181666** |
| Plaintiff, | **DEMAND FOR JURY TRIAL** |
| v. | |
| EMPLOYERS MUTUAL CASUALTY COMPANY dba EMC INSURANCE COMPANIES, a foreign corporation, | **Honorable Richard E. Gordon** |
| Defendant. | |

        Pursuant to Rule 38(b),Ariz. R. Civ. P., Plaintiff hereby requests a jury trial in the above captioned case.

        DATED:  April 5, 2018.                    MESCH CLARK ROTHSCHILD

                                                    By:   /s/Patrick J. Lopez, #019183
                                                           Melvin C. Cohen
                                                           Patrick J. Lopez
                                                           *Attorneys for Plaintiff*

2540156.DOCX

1  MESCH CLARK ROTHSCHILD
2  259 North Meyer Avenue
   Tucson, Arizona 85701
3  Phone:   (520) 624-8886
   Fax:     (520) 798-1037
4  Email: mcohen@mcrazlaw.com
5          plopez@mcrazlaw.com

6  By:    Melvin C. Cohen, #003728
          Patrick J. Lopez, #019183
7         78007-8/do

8  Attorneys for Plaintiff

9
                 **ARIZONA SUPERIOR COURT**
10
                      **PIMA COUNTY**
11

12  RAYGARR, LLC, an Arizona limited        Case **No.:  C20181666**
    liability company,
13
                                            **PLAINTIFF'S CERTIFICATE**
14                         Plaintiff,        **PURSUANT TO A.R.S. § 12-2602(A)**

15  v.

16  EMPLOYERS MUTUAL CASUALTY
    COMPANY dba EMC INSURANCE              **Honorable Richard E. Gordon**
17  COMPANIES, a foreign corporation,

18
                           Defendant.
19

20         Melvin C. Cohen and Patrick J. Lopez attorneys for the Plaintiff in the above

21  captioned matter, hereby certifies, pursuant to A.R.S. § 12-2602(A), that expert opinion

22  testimony is necessary to prove the standard of care or liability for this claim. The

23  undersigned further certifies that a preliminary expert opinion statement will be served on

24  the Defendant in connection with this matter as provided by the applicable rules.

25

26

1

DATED:  April 5, 2018.                    MESCH CLARK ROTHSCHILD

2

3                                          By:   /s/Patrick J. Lopez, #019183
                                                  Melvin C. Cohen
4                                                 Patrick J. Lopez
                                                  *Attorneys for Plaintiff*
5

6   2540086.DOCX

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FILED
TONI L. HELLON
CLERK, SUPERIOR COURT

4/5/2018 11:50:27 AM

BY: ALAN WALKER
DEPUTY

Case No. C20181666
HON. RICHARD E GORDON

PERSON/ATTORNEY FILING: Patrick J Lopez
MAILING ADDRESS: 259 N. MEYER AVENUE
CITY, STATE, ZIP CODE: TUCSON, AZ 85701
PHONE NUMBER: (520) 624-8886
E-MAIL ADDRESS: plopez@mcrazlaw.com
[ ☐ ] REPRESENTING SELF, WITHOUT AN ATTORNEY
(IF ATTORNEY) STATE BAR NUMBER: 019183, Issuing State: AZ

## ARIZONA SUPERIOR COURT, PIMA COUNTY

RAYGARR, LLC
Plaintiff(s),

V.

EMPLOYERS MUTUAL CASUALTY COMPANY
DBA EMC INSURANCE COMPANIES

CASE NO: _____

**RULE 102(a) FASTAR CERTIFICATE**

The undersigned certifies that he or she knows the eligibility criteria set by FASTAR Rule 101(b) and

certifies that this case:

**(NOTE – YOU MUST CHECK ONE OF THE BOXES BELOW OR THE CLERK WILL NOT ACCEPT THIS FORM.)**

☐ **DOES** meet the eligibility criteria established by Rule 101(b); or

☒ **DOES NOT** meet the eligibility criteria established by Rule 101(b).

Dated: April 05, 2018_____

Patrick J Lopez /s/_____
SIGNATURE

AZturboCourt.gov Form Set #2581184

| Attorney or Party without Attorney: | | | |
|---|---|---|---|
| MESCH, CLARK, & ROTHSCHILD<br>PATRICK J. LOPEZ (019183)<br>259 N. MEYER AVENUE<br>TUCSON , AZ 85701<br>  Telephone No: (520) 624-8886 | | | *For Court Use Only*<br>COPY<br>APR 1 8 2018 |
|   Attorney For: | *Ref. No. or File No.:*  780078 | | |

| Insert name of Court, and Judicial District and Branch Court: |
|---|
| PIMA COUNTY SUPERIOR COURT |

| Plaintiff: | RAYGARR, LLC, AN ARIZONA LIMITED LIABILITY COMPANY |
|---|---|
| Defendant: | EMPLOYERS MUTUAL CASUALTY COMPANY DBA EMC INSURANCE COMPANIES, A FOREIGN<br>CORPORATION |

| AFFIDAVIT OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number:<br>C20181666 |
|---|---|---|---|---|

1. *At the time of service I was at least 21 years of age and not a party to this action.*

2. I served copies of the
   (2) SUMMONS; (2) COMPLAINT; (2) RULE 102(A) FASTAR CERTIFICATE; (2) PLAINTIFF'S CERTIFICATE PURSUANT TO A.R.S 12-2602(A); (2) DEMAND FOR JURY TRIAL; (2) CIVIL COVER SHEET; (2) ATTACHMENT

3.   *a.*  *Party served:*    EMPLOYERS MUTUAL CASUALTY CO. DBA EMC INSURANCE COMPANIES, A FOREIGN CORPORATION, BY SERVICE UPON ARIZONA
                                    DEPARTMENT OF INSURANCE, KEITH A. SCHRAAD, DIRECTOR
     *b.*  *Person served:*  Elizabeth Villalino, Administrative Assistant, III

4. *Address where the party was served:*  2910 N 44th St., #210, Phoenix, AZ 85018

5. *I served the party:*
   a. by substituted service.  On: Wed, Apr 11 2018 at: 09:00 AM by leaving the copies with or in the presence of:
                                Elizabeth Villalino, Administrative Assistant, III , Hispanic , Female , Age: 30's , Hair: Black , Eyes: Brown , Height: 5'8" ,
                                Weight: 125 .

   (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.
   (b) I received for service on: Tue, April 10, 2018

   Service: $52.75, Mileage: $24.00, Affidavit: $10.00, Wait: $0.00, Fees Advanced: $16.50, Total: $103.25

                                         I Declare under penalty of perjury under the laws of the State of
                                         Arizona that the foregoing is true and correct.

6. *Person Executing:*
   *a.* Bill Bilyk MC-8749;
   b. Registered in Maricopa County
      FIRST LEGAL
      65 E. Pennington Street
      TUCSON, AZ 85701
   c. (520) 798-2200

                                      4/17/18                       B. B
                                      (Date)                             (Signature)

7. *STATE OF ARIZONA, COUNTY OF*  MARICOPA
   *Subscribed and sworn to (or affirmed) before on this* _____17_____ *day of* _____apr_____, 2018 *by Bill Bilyk (MC-8749)*
   *proved to me on the basis of satisfactory evidence to be the person who appeared before me.*

             OFFICIAL SEAL
             TRICIA DESPAIN
           Notary Public - State of Arizona                                       (Notary Signature)
             MARICOPA COUNTY
           My Comm. Expires March 8, 2019           AFFIDAVIT OF SERVICE


FIRSTLEGAL

                                                               *2170798 (35096678)*