**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raygarr LLC, | No. CV-18-00246-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| Employers Mutual Casualty Company, | |
| Defendant. | |

Pending before the Court is Defendant Employers Mutual Casualty Company's ("EMC") Motion to Dismiss (Doc. 7). Plaintiff Raygarr LLC ("Raygarr") filed a Response (Doc. 10), and EMC filed a Reply (Doc. 13).

**I.    Background**

Raygarr filed a Complaint in Pima County Superior Court case number C20181666 on April 5, 2018. (Doc. 1-4 at 8-17.) EMC removed the case to federal court on May 11, 2018. (Doc. 1.) Raygarr's Complaint alleges the following:

On or about February 18, 2014, EMC issued Commercial General Liability Policy #5D0-74-23---15 and Umbrella Policy #5J0-74-23---15 to Raygarr as insured and Raytheon Missile Systems Company ("Raytheon") as an additional insured. (Doc. 1-4 at 9.) The policies were effective for the period February 22, 2014 to February 22, 2015. (*Id.*) On or about July 28, 2014, Raygarr signed Purchase Order No. 4200942454 with Raytheon to perform as a general contractor and provide all labor, materials, and equipment to renovate and upgrade bathrooms in Raytheon's Building 842. (*Id.*) On or

about September 9, 2014, Raytheon informed Raygarr that a flood in Building 842 had caused extensive damage to the building and to personal property inside it. (*Id.*) The flood was allegedly caused by the breaking of PVC caps installed by Raygarr's subcontractor, Qualified Mechanical Contractors. (*Id.*) Raytheon demanded Raygarrr be responsible for flood remediation and repairs. (*Id.*) A representative of Raygarr contacted its insurance broker, who notified EMC of the flood. (*Id.* at 10.) EMC established a claim file and claim number for the incident and assigned EMC Senior Claims Adjuster Fabien Mireles to the claim. (*Id.*)

Flood remediation contractors Abracadabra and ATI were contacted to provide immediate flood remediation work. (*Id.*) Raytheon refused to sign contracts for the flood remediation work, informing Abracadabra and ATI that Raygarr should sign the contracts. (*Id.*) Raygarr's principle, Ray Garrison, informed Mireles that Raygarr was being asked to sign contracts for the flood remediation work. (*Id.* at 11.) Mireles told Garrison to sign the contracts and proceed with the flood remediation, and he ensured Garrison that the cost of the flood remediation and repairs would be covered by EMC. (*Id.*) Based on Mireles's representations, Raygarr signed the contracts with Abracadabra and ATI for the flood remediation of Building 842. (*Id.* at 12.) Raygarr used all of its cash, credit, and resources to perform the remediation and restoration work for Building 842. (*Id.*) Despite Mireles's representations, EMC refused and failed to pay Raygarr for the costs of the flood remediation and restoration. (*Id.*) As a direct consequence of EMC's conduct, Raygarr was suspended and then terminated from performing additional work as a general contractor for Raytheon. (*Id.*)

Based upon the above allegations, Raygarr asserts claims for negligent misrepresentation, negligence, equitable estoppel, insurance bad faith, and breach of contract. (*Id.* at 12-17.) Raygarr seeks compensatory and punitive damages as well as costs, attorneys' fees, and interest. (*Id.* at 17.)

**II.    Legal Standard**

EMC moves for dismissal under Rule 12(b)(6) of the Federal Rules of Civil

Procedure for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), *as amended*. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the complaint's "non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A court evaluating a motion to dismiss must view the allegations of a complaint "in the light most favorable to the plaintiff." *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990). All well-pleaded factual allegations of the complaint must be accepted as true, although the same does not apply to legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-79.

The court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908. A document is considered incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claims." *Id.*

## III. Discussion

EMC seeks dismissal of Raygarr's claims for breach of contract, negligent misrepresentation, negligent claim handling, and equitable estoppel. (Doc. 7 at 1.) EMC argues that the claims for negligent claim handling and equitable estoppel are not cognizable under Arizona law, and that the claims for breach of contract and negligent misrepresentation are not supported by the factual allegations of Raygarr's Complaint. (*Id.*)

### A. Breach of Contract

EMC argues that Raygarr's breach-of-contract claim fails as a matter of law because Raygarr's Complaint does not allege any contractual provision that EMC breached. (Doc. 7 at 5.) According to EMC, the insurance policies at issue required EMC to pay costs that Raygarr was legally obligated to pay, and EMC fulfilled this obligation by (1) defending Raygarr against Raytheon's claims when Raytheon brought suit against Raygarr alleging it was liable for property damage caused by the flood, and (2) paying the full amount Raygarr was legally obligated to pay as damages to Raytheon under the settlement agreement in that underlying action. (Doc. 7 at 2-3.) EMC argues that Raygarr's Complaint fails to allege that Raygarr was legally obligated to pay Abracadabra and ATI for emergency remediation costs such that the costs would fall within the policies' coverage. (*Id.* at 3.) EMC contends that Raygarr's breach-of-contract claim is based not on any alleged breach of the underlying insurance policies but on an alleged breach of an unwritten promise by Mireles, and that the unwritten promise cannot support a breach-of-contract claim because it was not supported by any consideration. (*Id.* at 5-6.)

Raygarr counters that its Complaint need only present "plausible grounds to infer" that a breach of contract occurred. (Doc. 10 at 4 (quoting *Twombly*, 550 U.S. at 556).) According to Raygarr, the factual allegations of the Complaint make it plausible that EMC breached express and implied terms of the underlying insurance policies by authorizing and consenting to Raygarr legally obligating itself to pay the remediation

contracts of Abracadabra and ATI, but then later refusing to pay the costs incurred pursuant to those contracts. (*Id.* at 4-5.)

A breach-of-contract claim requires a plaintiff to show (1) the existence of a contract, (2) breach of that contract, and (3) resulting damages. *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013). "[F]or an enforceable contract to exist there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Savoca Masonry Co. v. Homes & Son Constr. Co.*, 542 P.2d 817, 819 (Ariz. 1975). If a clause in an insurance contract appears ambiguous, courts "interpret it by looking to legislative goals, social policy, and the transaction as a whole." *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 187 P.3d 1107, 1110 (Ariz. 2008). If "other interpretive guides fail to elucidate a clause's meaning," courts will construe any remaining ambiguity against the insurer. *Id.*

The insurance policies issued by EMC to Raygarr are incorporated by reference into Raygarr's Complaint and thus may properly be considered on a Rule 12(b)(6) motion to dismiss. *See Ritchie*, 342 F.3d at 908. The Commercial General Liability Policy states that EMC "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Doc. 7-1 at 21.)[1] The policy requires the insured to notify EMC "as soon as practicable of an 'occurrence' or an offense which may result in a claim." (*Id.* at 31.)[2] It also provides: "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [EMC's] consent." (*Id.*)[3]

Based on the factual allegations of the Complaint and the insurance policies incorporated by reference, the Court finds that the breach-of-contract claim in Raygarr's Complaint is plausible on its face. There appears to be no dispute that the underlying

---

[1] The Umbrella Policy states that EMC "will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies." (Doc. 7-1 at 79.)
[2] The Umbrella Policy contains similar notice requirements. (Doc. 7-1 at 90-91.)
[3] The Umbrella Policy also contains this identical provision. (Doc. 7-1 at 91.)

insurance policies obligated EMC to pay sums that Raygarr was legally obligated to pay as damages as a result of the flood in Building 842. Raygarr alleges that it complied with the notice provisions of the underlying insurance policies and obtained EMC's express consent to assume an obligation to pay for emergency flood remediation work by Abracadabra and ATI, but that EMC later refused to pay for the emergency remediation costs that Raygarr had become legally obligated to pay. The factual content of Raygarr's Complaint allows the court to draw a reasonable inference that EMC is liable for breach of the contractual provision obligating it to pay sums that Raygarr "becomes legally obligated to pay as damages because of . . . 'property damage.'" (*See* Doc. 7-1 at 21.)

Because Raygarr's Complaint states a plausible claim for reach of the insurance policies issued by EMC, the Court rejects EMC's contention that Raygarr's breach-of-contract claim is premised upon breach of an oral promise unsupported by consideration. The Court declines to consider EMC's argument that Raygarr is judicial estopped from alleging that it was legally obligated to pay emergency remediation costs, because EMC raised this argument for the first time in its Reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (district courts "need not consider arguments raised for the first time in a reply brief"). To the extent the underlying terms of the insurance policies at issue are ambiguous, the Court declines to reach any conclusive interpretation at this stage of the proceedings. The Court merely finds that Raygarr has stated a plausible claim for breach of contract. EMC's motion to dismiss Raygarr's breach-of-contract claim will be denied.

### B. Negligent Misrepresentation

EMC also argues that Raygarr's negligent-misrepresentation claim should be dismissed as a matter of law because (1) it is premised on a promise of future conduct—*e.g.*, that EMC would pay the emergency remediation costs and that the costs would be considered a covered loss—and (2) a promise of future conduct cannot support a claim of negligent misrepresentation under Arizona law. (Doc. 7 at 6-7.)

"Arizona recognizes a cause of action for negligent misrepresentation as set forth in the Restatement (Second) of Torts § 552 (1977)." *McAlister v. Citibank*, 829 P.2d

1253, 1261 (Ariz. App. 1992). The Restatement provides:
> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977). A claim for negligent misrepresentation "requires a misrepresentation or omission of a *fact*," and "[a] promise of future conduct is not a statement of fact capable of supporting a claim of negligent misrepresentation." *McAlister*, 829 P.2d at 1261 (emphasis in original).

Raygarr's Complaint alleges that Mireles told Raygarr to sign the remediation contracts with Abracadabra and ATI, to proceed with the remediation, and that the loss was a covered loss. (Doc. 1-4 at 11.) These factual allegations do not merely involve a promise of future conduct; they involve an alleged misrepresentation regarding the existing coverage of EMC's insurance policies. *McAlister*, relied upon by EMC, is distinguishable. In that case, the plaintiff alleged that the defendant failed to fulfill a promise to renew a credit line at a competitive rate. 829 P.2d at 1256. Because the plaintiff alleged only that the defendant had made a promise of future conduct, the Arizona Court of Appeals rejected the plaintiff's negligent misrepresentation claim. *Id.* at 1261. Here, in contrast, Raygarr alleges not only that EMC made a promise of future conduct—e.g., that it *would* pay the emergency remediation costs—but also that EMC misrepresented an existing fact regarding insurance coverage.

EMC also relies upon *Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment*, 868 F. Supp. 2d 983 (E.D. Cal. 2012). *Foster Poultry Farms* is not binding precedent; it applies California, rather than Arizona, law; and it is factually distinguishable. In *Foster Poultry Farms*, the defendant sent the plaintiff a letter indicating it would indemnify the plaintiff against any patent infringement claims. *Id.* at 988-89. Unlike in the present case, the defendant in *Foster Poultry Farms* did not indicate that a patent infringement claim was covered by an existing indemnification clause; it merely made a promise to indemnify the plaintiff in the future.

Because the allegations of Raygarr's Complaint involve not only a promise of future conduct but a misrepresentation regarding the existing coverage of Raygarr's insurance policies, the Court will deny EMC's motion to dismiss Raygarr's negligent misrepresentation claim.

**C.    Negligence**

EMC argues that Raygarr's claim alleging negligent claim handling should be dismissed because Arizona does not recognize a cause of action for negligence in an insurer's handling of a claim. (Doc. 7 at 7.)  In its Response to EMC's Motion to Dismiss, Raygarr withdraws its claim for negligence but requests that the Court dismiss the claim without prejudice. (Doc. 10 at 8.)  EMC argues in its Reply that the dismissal should be with prejudice. (Doc. 13 at 8-9.)

In *Miel v. State Farm Mutual Automobile Insurance Company*, the Arizona Court of Appeals refused to recognize a cause of action for mere negligence in an insurer's claim handling. 912 P.2d 1333, 1340 (Ariz. App. 1995). Raygarr has identified no authority to show that a cause of action exists under Arizona law for negligence in an insurer's claim handling, nor has Raygarr made any arguments opposing EMC's motion to dismiss Raygarr's claim asserting negligent claim handling. (*See* Doc. 10 at 8.)

Furthermore, Raygarr has not identified any justification for its request that its claim asserting negligent claim handling be dismissed without prejudice. (*See id.*) At this stage of the proceeding, Raygarr may voluntarily dismiss its negligence claim "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Allowing a voluntary dismissal without prejudice would deprive EMC of a ruling on its motion to dismiss. *See Freeman v. United States*, 98 Fed. Cl. 360, 368-69 (2011). Voluntary dismissals without prejudice are disfavored when the plaintiff is "plainly seeking to avoid an adverse judgment." *See, e.g.*, *Minnesota Mining & Mfg. Co. v. Barr Labs., Inc.*, 289 F.3d 775, 784 (Fed. Cir. 2002); *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996). Accordingly, the Court will deny Raygarr's request to voluntarily dismiss its negligence claim without prejudice, and the Court will grant

1 | EMC's motion to dismiss the negligence claim with prejudice.

**D. Equitable Estoppel**

Finally, EMC argues that Raygarr's equitable estoppel claim fails as a matter of law because equitable estoppel is an affirmative defense rather than a cognizable cause of action. (Doc. 7 at 8.) In its Response, Raygarr concedes that it incorrectly labeled this claim as one for "equitable estoppel" when it should have been labeled as a claim for "promissory estoppel." (Doc. 10 at 8.) However, Raygarr argues that its Complaint adequately pleads all necessary elements of a claim for promissory estoppel, and that this Court should convert the claim to one for promissory estoppel or give Raygarr leave to amend to re-label the claim. (*Id.* at 8-9.) In its Reply, EMC avers that it does not oppose Raygarr's request to amend its Complaint to convert its equitable estoppel claim into a claim for promissory estoppel, so long as EMC has an opportunity to review and respond to the new promissory estoppel claim. (Doc. 13 at 9.)

In light of EMC's lack of objection, the Court will grant Raygarr's request for leave to file an amended complaint which converts the claim for equitable estoppel into a claim for promissory estoppel.

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 7) is **granted in part and denied in part as follows**:

1. The Motion to Dismiss is **denied** as to Plaintiff's claims for breach of contract and negligent misrepresentation.
2. The Motion to Dismiss is **granted** as to Plaintiff's claim for negligence. Plaintiff's claim alleging negligent claim handling is **dismissed with prejudice**.

. . . .

. . . .

. . . .

. . . .

. . . .

3. The Motion to Dismiss is **granted** as to Plaintiff's claim for equitable estoppel. Plaintiff's claim alleging equitable estoppel is **dismissed without prejudice and with leave to amend**. Within five (5) days of the date of this Order, Plaintiff shall file an Amended Complaint converting its equitable-estoppel claim into a claim for promissory estoppel.

Dated this 4th day of September, 2018.

_____
Honorable Rosemary Márquez
United States District Judge