Exhibit 1



**Keegan, Linscott & Kenon, PC**

Certified Public Accountants | Certified Fraud Examiners | Certified Insolvency and Restructuring Advisors

February 15, 2017

Mr. Mel Cohen
Mesch, Clark & Rothschild, P.C.
259 N. Meyer Avenue
Tucson, AZ 85701

Dear Mr. Cohen:

Keegan, Linscott & Kenon, PC ("KLK") has been engaged to provide financial analysis in the matter of Raygarr, LLC ("Raygarr") V. Raytheon Missile Systems Company ("Raytheon"). In particular, we have been asked to review and analyze potential lost profits of Raygarr. We have not been asked to make a determination of liability and express no opinion on liability.

Based on our analysis of information provided it is our opinion Raygarr incurred annual lost profits of $107,762 commencing on September 9, 2014 through its remaining corporate existence.

## Background

Raygarr is an Arizona Limited Liability Company that performs construction work. In this case, Raygarr was contracted by Raytheon to perform construction related work for Raytheon Building 842 to upgrade bathrooms. On September 8, 2014, as part of its work, Raygarr's subcontractor installed twelve PVC caps to temporarily cap water pipes in the bathrooms. Commencing at approximately 6:40 PM on September 8, 2014, the PVC caps began to fail and Raytheon attempted to fix the leaks and the resulting flooding. This allegedly continued throughout the night with multiple caps failing and flooding occurring. Raygarr was contacted the morning of September 9, 2014 regarding the cap failures and flooding and subsequently remediated the damages. Among other things, Raygarr claims it was not fully compensated for the remediation work it performed and as a result was financially damaged and was forced to go out of business. Raytheon sued Raygarr and others for Breach of Contract, Negligence, Implied Warranty etc. for damages it incurred. Raygarr countersued Raytheon for Breach of Contract, Unjust Enrichment, Breach of Settlement Agreement etc…

## Analysis

In order to analyze lost profits, we reviewed the QuickBooks accounting records of Raygarr for 2013, the most recent full year prior to the September 8, 2014 date of loss. The 2013 year was also the first year in which Raygarr had hired an outside accountant to enter their financial activity in an accounting software package. Per the 2013 QuickBooks, Raygarr had Net Operating Income of



Raygarr-01087

Mr. Mel Cohen
Mesch, Clark & Rothschild, P.C.
February 15, 2017
Page 2

$44,840 for 2013 (see Exhibit A). However, we were informed by Ray Garrison, the principal of Raygarr, that certain personal expenses had also been recorded as business expenses in 2013. We requested that Mr. Garrison identify the personal expenses in 2013 that had been recorded as business expenses in order to determine the actual profits of Raygarr for 2013.  Mr. Garrison performed this analysis and we reviewed the items identified as personal expenses in the Raygarr Profit and Loss Statement from QuickBooks.

Based on our analysis, we determined that $62,922 of personal expenses had been recorded as business expenses (see Exhibit B). As a result, the business net operating income for 2013 was $107,762. Based on this analysis, we assume Raygarr, had they continued to perform at the same level of gross revenues in the future, would have made comparable net operating income. As a result, lost profits would be $107,762 annually for its remaining corporate existence.

**Conclusion**

Based on our review and analysis of evidence in this matter Raygarr incurred annual lost profits of $107,762 commencing on September 9, 2014 through its remaining corporate existence.

We reserve the right to update our report should additional information be provided. Questions regarding this report may be directed to Chris Linscott who is the testifying expert in this matter. Mr. Linscott's CV is attached as Exhibit C to this report.

Sincerely,

Keegan, Linscott & Kenon, P.C.

Enclosures: Exhibits A - C

Raygarr-01088

# EXHIBIT A

Raygarr-01089

# RAYGARR LLC
## Profit and Loss
### January - December 2013

|  | Total |
|---|---:|
| **Income** | |
| Gross Receipts - Construction | |
| General Contracting | 4,659,801.93 |
| Sales Tax (Income) | 257,516.92 |
| Total Gross Receipts - Construction | $ 4,917,318.85 |
| **Total Income** | $ 4,917,318.85 |
| **Gross Profit** | $ 4,917,318.85 |
| **Expenses** | |
| 1. Project Expenses | |
| Materials & Equipment | 55,932.43 |
| Payroll Expenses | |
| Contract Labor | 39,940.76 |
| Payroll - Net | 109,184.55 |
| Total Payroll Expenses | $ 149,125.31 |
| Professional Services | 1,819.50 |
| Subcontractors | 3,958,312.90 |
| Total 1. Project Expenses | $ 4,165,190.14 |
| 2. General & Administrative Expenses | |
| Automotive/Truck | |
| Finance, Purchase | 29,000.00 |
| Fuel | 4,830.96 |
| Insurance | 5,054.01 |
| Maintenance, Repair | 1,356.98 |
| Other Automotive/Truck | 1,137.36 |
| Total Automotive/Truck | $ 41,379.31 |
| Bank Charges | 407.99 |
| Donations/Advertising | 782.66 |
| Finance costs | 20,571.95 |
| Insurance | |
| General Liability | 13,761.86 |
| Workers' Compensation | 14,846.18 |
| Total Insurance | $ 28,608.04 |
| Interest Expense | 95,493.29 |
| Meeting Expenses | 254.23 |
| Office Expenses | |
| Communications | 6,389.46 |
| Computers | 2,906.86 |
| Maintenance, Repair | 737.00 |
| Rent, Lease | 13,298.37 |
| Supplies, Equipment | 1,149.80 |
| Utilities, Satellite | 3,707.68 |

| | | |
|---|---:|---:|
| **Total Office Expenses** | $ | **28,189.17** |
| **Other General & Administrative** | | 3,451.77 |
| **Salaries** | | |
| **Contract** | | 73,055.00 |
| **Payroll - Net** | | 77,255.89 |
| **Total Salaries** | $ | **150,310.89** |
| **Travel** | | 352.46 |
| **Total 2. General & Administrative Expenses** | $ | **369,801.76** |
| **Credit Card Payments** | | 58,037.90 |
| **Employee Reimbursements** | | 7,709.52 |
| **Legal & Professional Fees** | | 950.00 |
| **Permits & Fees** | | 165.00 |
| **Purchases** | | 2,839.50 |
| **Taxes Paid** | | 267,784.95 |
| **Unapplied Cash Bill Payment Expense** | | 0.00 |
| **Total Expenses** | $ | **4,872,478.77** |
| **Net Operating Income** | $ | **44,840.08** |

Raygarr-01091

# EXHIBIT B

Raygarr-01092

**Raygarr Litigation**

*Transactions Marked by Ray Garrison as Personal and Recorded In QuickBooks As Business Expense*

| B or P | B |
|---|---|

| Expense | Sum of Amount |
|---|---|
| Auto Purchase | (29,000.00) |
| Auto Repair | (1,350.98) |
| Bank Charge | (65.00) |
| Communications | (5,884.56) |
| Computers | (2,407.86) |
| Credit Cards | (305.00) |
| Fuel | (4,088.39) |
| Materials & Equip | (2,905.66) |
| Meeting Exp | (191.82) |
| Other Auto/Truck | (1,137.36) |
| Other General & Admin | (963.40) |
| Personal | (457.23) |
| Purchases | (2,769.08) |
| Rent, Lease | (6,920.05) |
| Repair | (364.00) |
| Supplies, Equip | (341.65) |
| Taxes Paid | (447.88) |
| Travel | (152.46) |
| Utilities, Satelite | (3,169.91) |
| **Grand Total** | **(62,922.29)** |

**RAYGARR LLC**
**Business Checking (1) - Transaction Report**
2013

| Date | Type | Num | Name | Memo/Description | Split | Amount | P&L | B or P |
|---|---|---|---|---|---|---|---|---|
| 11/12/2013 | Check | 4100 | Hughes Federal Credit Union | | 2. General & Administrative Expenses:Automotive/Truck:Finance, Purchase | (29,000.00) | Auto Purchase | B |
| 02/05/2013 | Expense | DBT CRD | Gasoline Alley | | 2. General & Administrative Expenses:Automotive/Truck:Maintenance, Repair | (266.57) | Auto Repair | B |
| 03/04/2013 | Expense | DBT CRD | AAA Arizona | | 2. General & Administrative Expenses:Automotive/Truck:Maintenance, Repair | (185.00) | Auto Repair | B |
| 03/23/2013 | Expense | DBT CRD | Reay's Ranch Investors | | 2. General & Administrative Expenses:Automotive/Truck:Maintenance, Repair | (7.00) | Auto Repair | B |
| 04/18/2013 | Expense | DBT CRD | Reay's Ranch Investors | | 2. General & Administrative Expenses:Automotive/Truck:Maintenance, Repair | (7.00) | Auto Repair | B |
| 07/10/2013 | Expense | DBT CRD | Jiffy Lube | | 2. General & Administrative Expenses:Automotive/Truck:Maintenance, Repair | (67.81) | Auto Repair | B |
| 07/10/2013 | Expense | DBT CRD | Big O Tires | | 2. General & Administrative Expenses:Automotive/Truck:Maintenance, Repair | (526.00) | Auto Repair | B |
| 08/24/2013 | Expense | DBT CRD | O'Reilly Automotive | | 2. General & Administrative Expenses:Automotive/Truck:Maintenance, Repair | (36.05) | Auto Repair | B |
| 10/28/2013 | Expense | DBT CRD | Gasoline Alley | | 2. General & Administrative Expenses:Automotive/Truck:Maintenance, Repair | (91.56) | Auto Repair | B |
| 11/21/2013 | Expense | DBT CRD | Gasoline Alley | | 2. General & Administrative Expenses:Automotive/Truck:Maintenance, Repair | (30.58) | Auto Repair | B |
| 11/27/2013 | Expense | DBT CRD | Jiffy Lube | | 2. General & Administrative Expenses:Automotive/Truck:Maintenance, Repair | (116.41) | Auto Repair | B |
| 11/29/2013 | Expense | DBT CRD | Arizona Auto Spa | | 2. General & Administrative Expenses:Automotive/Truck:Maintenance, Repair | (11.00) | Auto Repair | B |
| 12/23/2013 | Expense | DBT CRD | Arizona Auto Spa | | 2. General & Administrative Expenses:Automotive/Truck:Maintenance, Repair | (6.00) | Auto Repair | B |
| 05/08/2013 | Expense | BNK FEE | Bank of America | | 2. General & Administrative Expenses:Bank Charges | (30.00) | Bank Charge | B |
| 06/25/2013 | Expense | BNK DBT | Bank of America | | 2. General & Administrative Expenses:Bank Charges | (35.00) | Bank Charge | B |
| 01/09/2013 | Expense | DIR DBT | Verizon Wireless | | 2. General & Administrative Expenses:Office Expenses:Communications | (383.70) | Communications | B |
| 01/10/2013 | Expense | DBT CRD | AOL | | 2. General & Administrative Expenses:Office Expenses:Communications | (27.99) | Communications | B |
| 01/23/2013 | Expense | DIR DBT | Verizon Wireless | | 2. General & Administrative Expenses:Office Expenses:Communications | (384.26) | Communications | B |
| 02/10/2013 | Expense | DBT CRD | AOL | | 2. General & Administrative Expenses:Office Expenses:Communications | (27.99) | Communications | B |
| 02/22/2013 | Expense | DIR DBT | Verizon Wireless | | 2. General & Administrative Expenses:Office Expenses:Communications | (394.09) | Communications | B |
| 02/23/2013 | Expense | DBT CRD | Verizon Wireless | | 2. General & Administrative Expenses:Office Expenses:Communications | (32.71) | Communications | B |
| 03/10/2013 | Expense | DBT CRD | AOL | | 2. General & Administrative Expenses:Office Expenses:Communications | (27.99) | Communications | B |
| 03/25/2013 | Expense | DIR DBT | Verizon Wireless | | 2. General & Administrative Expenses:Office Expenses:Communications | (395.84) | Communications | B |
| 04/01/2013 | Expense | DBT CRD | Verizon Wireless | | 2. General & Administrative Expenses:Office Expenses:Communications | (76.36) | Communications | B |
| 04/25/2013 | Expense | DIR DBT | Verizon Wireless | | 2. General & Administrative Expenses:Office Expenses:Communications | (443.38) | Communications | B |
| 05/09/2013 | Expense | DBT CRD | Verizon Wireless | | 2. General & Administrative Expenses:Office Expenses:Communications | (163.64) | Communications | B |
| 05/31/2013 | Expense | DIR DBT | Verizon Wireless | | 2. General & Administrative Expenses:Office Expenses:Communications | (409.43) | Communications | B |

Raygarr-01094

| Date | Type | Num | Name | Memo/Description | Split | Amount | P&L | B or P |
|---|---|---|---|---|---|---|---|---|
| 06/10/2013 | Expense | DBT CRD | AOL | | 2. General & Administrative Expenses:Office Expenses:Communications | (27.99) | Communications | B |
| 07/10/2013 | Expense | DBT CRD | AOL | | 2. General & Administrative Expenses:Office Expenses:Communications | (27.99) | Communications | B |
| 07/29/2013 | Expense | DIR DBT | Verizon Wireless | | 2. General & Administrative Expenses:Office Expenses:Communications | (461.03) | Communications | B |
| 08/10/2013 | Expense | DBT CRD | AOL | | 2. General & Administrative Expenses:Office Expenses:Communications | (27.99) | Communications | B |
| 08/15/2013 | Expense Bill Payment (Check) | DIR DBT | Verizon Wireless | 762818296-00001 | Accounts Payable | (506.63) | Communications | B |
| 09/10/2013 | Expense | DBT CRD | AOL | | 2. General & Administrative Expenses:Office Expenses:Communications | (27.99) | Communications | B |
| 09/13/2013 | Expense Bill Payment (Check) | DIR DBT | Verizon Wireless | 762818296-00001 | Accounts Payable | (458.80) | Communications | B |
| 10/10/2013 | Expense | DBT CRD | AOL | | 2. General & Administrative Expenses:Office Expenses:Communications | (27.99) | Communications | B |
| 10/17/2013 | Expense Bill Payment (Check) | DIR DBT | Verizon Wireless | 762818296-00001 | Accounts Payable | (534.33) | Communications | B |
| 11/10/2013 | Expense | DBT CRD | AOL | | 2. General & Administrative Expenses:Office Expenses:Communications | (27.99) | Communications | B |
| 12/04/2013 | Expense | DIR DBT | Verizon Wireless | 762818296 | 2. General & Administrative Expenses:Office Expenses:Communications | (988.45) | Communications | B |
| 02/23/2013 | Expense | DBT CRD | Verizon Wireless | | 2. General & Administrative Expenses:Office Expenses:Computers | (845.83) | Computers | B |
| 08/22/2013 | Expense | DBT CRD | Best Buy | | 2. General & Administrative Expenses:Office Expenses:Computers | (29.14) | Computers | B |
| 09/17/2013 | Expense | DBT CRD | AIA Products | | 2. General & Administrative Expenses:Office Expenses:Computers | (469.00) | Computers | B |
| 10/19/2013 | Expense | DBT CRD | Best Buy | | 2. General & Administrative Expenses:Office Expenses:Computers | (146.91) | Computers | B |
| 10/25/2013 | Expense | DBT CRD | Best Buy | | 2. General & Administrative Expenses:Office Expenses:Computers | (1,086.98) | Computers | B |
| 02/08/2013 | Expense | DBT CRD | Chase | | Credit Card Payments | (305.00) | Credit Cards | B |
| 01/02/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (61.61) | Fuel | B |
| 01/06/2013 | Expense | DBT CRD | Safeway | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (71.25) | Fuel | B |
| 01/10/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (45.84) | Fuel | B |
| 01/15/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (93.87) | Fuel | B |
| 01/18/2013 | Expense | DBT CRD | Safeway | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (68.90) | Fuel | B |
| 01/23/2013 | Expense | DBT CRD | Safeway | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (72.39) | Fuel | B |
| 01/27/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (93.68) | Fuel | B |
| 01/31/2013 | Expense | DBT CRD | Shell | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (75.90) | Fuel | B |
| 02/05/2013 | Expense | DBT CRD | Safeway | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (52.74) | Fuel | B |
| 02/10/2013 | Expense | DBT CRD | Circle K | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (73.36) | Fuel | B |
| 02/15/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (76.64) | Fuel | B |
| 02/18/2013 | Expense | DBT CRD | Safeway | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (78.82) | Fuel | B |
| 02/21/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (62.67) | Fuel | B |

Raygarr-01095

| Date | Type | Num | Name | Memo/Description | Split | Amount | P&L | B or P |
|---|---|---|---|---|---|---|---|---|
| 02/25/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (71.80) | Fuel | B |
| 02/28/2013 | Expense | DBT CRD | Texaco | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (93.56) | Fuel | B |
| 03/05/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (66.44) | Fuel | B |
| 03/12/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (78.54) | Fuel | B |
| 03/15/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (74.56) | Fuel | B |
| 03/23/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (61.86) | Fuel | B |
| 04/23/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (75.64) | Fuel | B |
| 04/26/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (65.51) | Fuel | B |
| 04/30/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (63.78) | Fuel | B |
| 05/03/2013 | Expense | DBT CRD | QuickTrip | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (59.65) | Fuel | B |
| 05/03/2013 | Expense | DBT CRD | QuickTrip | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (48.98) | Fuel | B |
| 05/06/2013 | Expense | DBT CRD | Safeway | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (77.39) | Fuel | B |
| 05/31/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (55.16) | Fuel | B |
| 06/04/2013 | Expense | DBT CRD | Safeway | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (50.24) | Fuel | B |
| 06/07/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (64.83) | Fuel | B |
| 06/11/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (66.22) | Fuel | B |
| 06/26/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (59.29) | Fuel | B |
| 06/30/2013 | Expense | DBT CRD | Safeway | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (35.01) | Fuel | B |
| 07/03/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (70.93) | Fuel | B |
| 07/09/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (55.90) | Fuel | B |
| 07/15/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (74.99) | Fuel | B |
| 07/24/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (70.76) | Fuel | B |
| 07/29/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (75.94) | Fuel | B |
| 08/01/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (66.01) | Fuel | B |
| 08/06/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (83.86) | Fuel | B |
| 08/12/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (65.32) | Fuel | B |
| 08/13/2013 | Expense | DBT CRD | Safeway | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (30.06) | Fuel | B |
| 08/22/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (64.15) | Fuel | B |
| 08/27/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (73.89) | Fuel | B |
| 08/31/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (76.16) | Fuel | B |

Raygarr-01096

| Date | Type | Num | Name | Memo/Description | Split | Amount | P&L | B or P |
|---|---|---|---|---|---|---|---|---|
| 09/06/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (64.76) | Fuel | B |
| 09/11/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (66.75) | Fuel | B |
| 09/17/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (82.27) | Fuel | B |
| 10/08/2013 | Expense | DBT CRD | Safeway | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (73.31) | Fuel | B |
| 10/15/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (74.50) | Fuel | B |
| 10/19/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (70.36) | Fuel | B |
| 10/29/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (67.62) | Fuel | B |
| 11/12/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (85.84) | Fuel | B |
| 11/22/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (72.87) | Fuel | B |
| 12/02/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (84.38) | Fuel | B |
| 12/06/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (66.29) | Fuel | B |
| 12/10/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (85.60) | Fuel | B |
| 12/15/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (91.71) | Fuel | B |
| 12/19/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (66.93) | Fuel | B |
| 12/23/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (67.97) | Fuel | B |
| 12/26/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (25.90) | Fuel | B |
| 12/30/2013 | Expense | DBT CRD | Valero Corner Store | | 2. General & Administrative Expenses:Automotive/Truck:Fuel | (96.63) | Fuel | B |
| 02/08/2013 | Expense | DBT CRD | Home Depot | 01/13 Bank Stmt | 1. Project Expenses:Materials & Equipment | (15.88) | Materials & Equip | B |
| 02/22/2013 | Expense | DBT CRD | Home Depot | 01/13 Bank Stmt | 1. Project Expenses:Materials & Equipment | (276.52) | Materials & Equip | B |
| 03/27/2013 | Expense | DBT CRD | Home Depot | 01/13 Bank Stmt | 1. Project Expenses:Materials & Equipment | (82.83) | Materials & Equip | B |
| 03/29/2013 | Expense | DBT CRD | Home Depot | 01/13 Bank Stmt | 1. Project Expenses:Materials & Equipment | (69.00) | Materials & Equip | B |
| 04/09/2013 | Expense | DBT CRD | Home Depot | 01/13 Bank Stmt | 1. Project Expenses:Materials & Equipment | (50.86) | Materials & Equip | B |
| 04/10/2013 | Expense | DBT CRD | Home Depot | | 1. Project Expenses:Materials & Equipment | (188.00) | Materials & Equip | B |
| 08/27/2013 | Expense | DBT CRD | Unicoa Construction | | 1. Project Expenses:Materials & Equipment | (327.50) | Materials & Equip | B |
| 10/04/2013 | Check | 3933 | Cash | | 1. Project Expenses:Materials & Equipment | (400.00) | Materials & Equip | B |
| 10/16/2013 | Expense | DBT CRD | Toyota Lift of Arizona | | 1. Project Expenses:Materials & Equipment | (505.91) | Materials & Equip | B |
| 12/17/2013 | Expense | DBT CRD | Arizona Restaurant Supply | | 1. Project Expenses:Materials & Equipment | (389.16) | Materials & Equip | B |
| 04/03/2013 | Expense | DBT CRD | Cracker Barrel | | 2. General & Administrative Expenses:Meeting Expenses | (30.22) | Meeting Exp | B |
| 08/30/2013 | Expense | DBT CRD | Jerry Bob's Restaurant | | 2. General & Administrative Expenses:Meeting Expenses | (27.53) | Meeting Exp | B |
| 11/05/2013 | Expense | DBT CRD | Safeway | | 2. General & Administrative Expenses:Meeting Expenses | (69.24) | Meeting Exp | B |

Raygarr-01097

| Date | Type | Num | Name | Memo/Description | Split | Amount | P&L | B or P |
|---|---|---|---|---|---|---|---|---|
| 11/07/2013 | Expense | DBT CRD | AJ's | | 2. General & Administrative Expenses:Meeting Expenses | (64.83) | Meeting Exp | B |
| 01/28/2013 | Expense | DBT CRD | AAA Arizona | | 2. General & Administrative Expenses:Automotive/Truck:Other Automotive/Truck | (154.00) | Other Auto/Truck | B |
| 07/31/2013 | Expense | DBT CRD | Motor Vehicle Division | | 2. General & Administrative Expenses:Automotive/Truck:Other Automotive/Truck | (71.20) | Other Auto/Truck | B |
| 11/14/2013 | Check | 4101 | Motor Vehicle Division | | 2. General & Administrative Expenses:Automotive/Truck:Other Automotive/Truck | (912.16) | Other Auto/Truck | B |
| 01/07/2013 | Expense | DBT CRD | D&B | | 2. General & Administrative Expenses:Other General & Administrative | (50.00) | Other General & Admin | B |
| 03/22/2013 | Check | 3495 | U.S. Postal Service | | 2. General & Administrative Expenses:Other General & Administrative | (44.00) | Other General & Admin | B |
| 04/22/2013 | Expense | DBT CRD | U.S. Postal Service | | 2. General & Administrative Expenses:Other General & Administrative | (18.40) | Other General & Admin | B |
| 04/25/2013 | Expense | DBT CRD | BBB of Southern Arizona | | 2. General & Administrative Expenses:Other General & Administrative | (40.00) | Other General & Admin | B |
| 12/02/2013 | Expense | DBT CRD | United TranzActions | | 2. General & Administrative Expenses:Other General & Administrative | (505.37) | Other General & Admin | B |
| 12/15/2013 | Expense | DBT CRD | The Olive Garden | | 2. General & Administrative Expenses:Other General & Administrative | (305.63) | Other General & Admin | B |
| 02/16/2013 | Expense | DBT CRD | Boot Barn | | Personal Expenses - Ray Garrison | (417.30) | Personal | B |
| 08/24/2013 | Expense | DBT CRD | Valero Corner Store | | Personal Expenses - Ray Garrison | (39.93) | Personal | B |
| 01/06/2013 | Expense | DBT CRD | Texas Roadhouse | | Purchases | (47.00) | Purchases | B |
| 01/16/2013 | Expense | DBT CRD | Eroteca | | Purchases | (56.69) | Purchases | B |
| 01/16/2013 | Expense | DBT CRD | Bashas' | | Purchases | (10.34) | Purchases | B |
| 01/16/2013 | Expense | DBT CRD | Bashas' | | Purchases | (4.92) | Purchases | B |
| 01/20/2013 | Expense | DBT CRD | Bashas' | | Purchases | (9.83) | Purchases | B |
| 01/20/2013 | Expense | DBT CRD | WalMart | | Purchases | (20.76) | Purchases | B |
| 01/26/2013 | Expense | DBT CRD | WalMart | | Purchases | (61.23) | Purchases | B |
| 01/27/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (27.44) | Purchases | B |
| 02/03/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (20.34) | Purchases | B |
| 02/05/2013 | Expense | DBT CRD | El Charro | | Purchases | (33.26) | Purchases | B |
| 02/09/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (25.71) | Purchases | B |
| 02/14/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (50.36) | Purchases | B |
| 02/17/2013 | Expense | DBT CRD | WalMart | | Purchases | (127.94) | Purchases | B |
| 02/20/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (33.34) | Purchases | B |
| 02/21/2013 | Expense | DBT CRD | Bashas' | | Purchases | (19.03) | Purchases | B |
| 02/24/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (22.43) | Purchases | B |
| 02/28/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (29.40) | Purchases | B |
| 03/01/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (33.45) | Purchases | B |

Raygarr-01098

| Date | Type | Num | Name | Memo/Description | Split | Amount | P&L | B or P |
|---|---|---|---|---|---|---|---|---|
| 03/03/2013 | Expense | DBT CRD | Chili's | | Purchases | (33.33) | Purchases | B |
| 03/07/2013 | Expense | DBT CRD | Walgreens | | Purchases | (33.60) | Purchases | B |
| 03/09/2013 | Expense | DBT CRD | Macayo | | Purchases | (35.26) | Purchases | B |
| 03/15/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (27.42) | Purchases | B |
| 03/17/2013 | Expense | DBT CRD | The Olive Garden | | Purchases | (36.93) | Purchases | B |
| 03/22/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (29.61) | Purchases | B |
| 03/23/2013 | Expense | DBT CRD | WalMart | | Purchases | (49.15) | Purchases | B |
| 03/24/2013 | Expense | DBT CRD | El Charro | | Purchases | (38.02) | Purchases | B |
| 04/02/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (41.44) | Purchases | B |
| 04/06/2013 | Expense | DBT CRD | Albertsons | | Purchases | (82.60) | Purchases | B |
| 04/07/2013 | Expense | DBT CRD | Red Lobster | | Purchases | (39.55) | Purchases | B |
| 05/04/2013 | Expense | DBT CRD | Coco's | | Purchases | (34.33) | Purchases | B |
| 05/05/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (29.94) | Purchases | B |
| 05/08/2013 | Expense | DBT CRD | Sy6 | | Purchases | (11.01) | Purchases | B |
| 06/22/2013 | Expense | DBT CRD | Albertsons | | Purchases | (9.17) | Purchases | B |
| 07/08/2013 | Expense | DBT CRD | Bed Bath & Beyond | | Purchases | (27.95) | Purchases | B |
| 07/18/2013 | Expense | DBT CRD | Applebee's | | Purchases | (35.89) | Purchases | B |
| 07/20/2013 | Expense | DBT CRD | Walgreens | | Purchases | (30.71) | Purchases | B |
| 07/21/2013 | Expense | DBT CRD | Outback Steakhouse | | Purchases | (56.39) | Purchases | B |
| 07/23/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (28.09) | Purchases | B |
| 07/25/2013 | Expense | DBT CRD | El Charro | | Purchases | (270.00) | Purchases | B |
| 07/26/2013 | Expense | DBT CRD | Bed Bath & Beyond | | Purchases | (254.15) | Purchases | B |
| 07/27/2013 | Expense | DBT CRD | The Good Egg | | Purchases | (29.74) | Purchases | B |
| 07/29/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (34.50) | Purchases | B |
| 08/01/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (38.33) | Purchases | B |
| 08/03/2013 | Expense | DBT CRD | DDN Steakhouse | | Purchases | (51.68) | Purchases | B |
| 08/10/2013 | Expense | DBT CRD | Agave Restaurant | | Purchases | (72.23) | Purchases | B |
| 08/10/2013 | Expense | DBT CRD | Bed Bath & Beyond | | Purchases | (43.81) | Purchases | B |
| 08/11/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (29.82) | Purchases | B |
| 08/23/2013 | Expense | DBT CRD | Anthony's in the Catalinas | | Purchases | (46.03) | Purchases | B |

| Date | Type | Num | Name | Memo/Description | Split | Amount | P&L | B or P |
|---|---|---|---|---|---|---|---|---|
| 08/24/2013 | Expense | DBT CRD | Walgreens | | Purchases | (80.40) | Purchases | B |
| 08/24/2013 | Expense | DBT CRD | Bashas' | | Purchases | (31.44) | Purchases | B |
| 08/26/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (25.78) | Purchases | B |
| 08/28/2013 | Expense | DBT CRD | Walgreens | | Purchases | (14.98) | Purchases | B |
| 08/31/2013 | Expense | DBT CRD | Red Lobster | | Purchases | (63.57) | Purchases | B |
| 08/31/2013 | Expense | DBT CRD | The Good Egg | | Purchases | (27.71) | Purchases | B |
| 09/02/2013 | Expense | DBT CRD | Bed Bath & Beyond | | Purchases | (23.98) | Purchases | B |
| 09/04/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (25.09) | Purchases | B |
| 09/06/2013 | Expense | DBT CRD | Macayo | | Purchases | (30.88) | Purchases | B |
| 09/12/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (46.89) | Purchases | B |
| 09/14/2013 | Expense | DBT CRD | Mimi's Cafe | | Purchases | (27.78) | Purchases | B |
| 12/24/2013 | Expense | DBT CRD | WalMart | | Purchases | (156.43) | Purchases | B |
| 01/07/2013 | Bill Payment (Check) | 3333 | Green Tree | 233197912 | Accounts Payable | (540.83) | Rent, Lease | B |
| 02/06/2013 | Expense | DBT CRD | Mobile Mini | | 2. General & Administrative Expenses:Office Expenses:Rent, Lease | (374.27) | Rent, Lease | B |
| 03/06/2013 | Bill Payment (Check) | DIR DBT | Green Tree | 233197912 (tel pmt) | Accounts Payable | (642.35) | Rent, Lease | B |
| 03/26/2013 | Bill Payment (Check) | 3505 | Green Tree | 233197912 | Accounts Payable | (591.59) | Rent, Lease | B |
| 05/02/2013 | Bill Payment (Check) | 3605 | Green Tree | 233197912 | Accounts Payable | (591.59) | Rent, Lease | B |
| 06/13/2013 | Bill Payment (Check) | DIR DBT | Green Tree | 233197912 (tel pmt) | Accounts Payable | (540.83) | Rent, Lease | B |
| 06/27/2013 | Bill Payment (Check) | 3709 | Green Tree | 233197912 | Accounts Payable | (630.35) | Rent, Lease | B |
| 06/27/2013 | Check | 3707 | SM & R | | 2. General & Administrative Expenses:Office Expenses:Rent, Lease | (38.29) | Rent, Lease | B |
| 08/08/2013 | Bill Payment (Check) | DIR DBT | Green Tree | 233197912 | Accounts Payable | (603.59) | Rent, Lease | B |
| 10/11/2013 | Bill Payment (Check) | DIR DBT | Green Tree | 233197912 (epay conf #22845039) | Accounts Payable | (591.59) | Rent, Lease | B |
| 11/18/2013 | Bill Payment (Check) | DIR DBT | Green Tree | 233197912 | Accounts Payable | (1,183.18) | Rent, Lease | B |
| 12/05/2013 | Bill Payment (Check) | 4166 | Green Tree | 233197912 | Accounts Payable | (591.59) | Rent, Lease | B |
| 01/11/2013 | Check | 3351 | Carlos | | 2. General & Administrative Expenses:Office Expenses:Maintenance, Repair | (39.00) | Repair | B |
| 08/05/2013 | Check | 3797 | Carlos | | 2. General & Administrative Expenses:Office Expenses:Maintenance, Repair | (285.00) | Repair | B |
| 08/08/2013 | Check | 3823 | Carlos | | 2. General & Administrative Expenses:Office Expenses:Maintenance, Repair | (40.00) | Repair | B |
| 02/23/2013 | Expense | DBT CRD | Sam Levitz Furniture | | 2. General & Administrative Expenses:Office Expenses:Supplies, Equipment | (162.56) | Supplies, Equip | B |
| 05/30/2013 | Expense | DBT CRD | WalMart | | 2. General & Administrative Expenses:Office Expenses:Supplies, Equipment | (37.71) | Supplies, Equip | B |
| 07/30/2013 | Expense | DBT CRD | WalMart | | 2. General & Administrative Expenses:Office Expenses:Supplies, Equipment | (65.41) | Supplies, Equip | B |

| Date | Type | Num | Name | Memo/Description | Split | Amount | P&L | B or P |
|---|---|---|---|---|---|---|---|---|
| 08/21/2013 | Expense | DBT CRD | WalMart | | 2. General & Administrative Expenses:Office Expenses:Supplies, Equipment | (22.93) | Supplies, Equip | B |
| 09/03/2013 | Expense | DBT CRD | Bed Bath & Beyond | | 2. General & Administrative Expenses:Office Expenses:Supplies, Equipment | (53.04) | Supplies, Equip | B |
| 04/08/2013 | Expense | DIR DBT | Pima County Treasurer | | Taxes Paid | (447.88) | Taxes Paid | B |
| 04/02/2013 | Expense | DBT CRD | Hotels.com | | 2. General & Administrative Expenses:Travel | (152.46) | Travel | B |
| 11/20/2012 | Bill Payment (Check) | 3233 | Shiloh Water | 73 | Accounts Payable | (118.38) | Utilities, Satelite | B |
| 01/07/2013 | Bill Payment (Check) | 3334 | Shiloh Water | 73 | Accounts Payable | (60.72) | Utilities, Satelite | B |
| 01/17/2013 | Bill Payment (Check) | 3365 | Shiloh Water | 73 | Accounts Payable | (43.79) | Utilities, Satelite | B |
| 01/24/2013 | Expense | DBT CRD | Dish Network | | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (35.99) | Utilities, Satelite | B |
| 01/24/2013 | Expense | DBT CRD | DirecTV | | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (104.03) | Utilities, Satelite | B |
| 01/29/2013 | Bill Payment (Check) | DIR DBT | Trico Electric Cooperative, Inc. | 2486701 | Accounts Payable | (55.15) | Utilities, Satelite | B |
| 02/21/2013 | Bill Payment (Check) | DIR DBT | Trico Electric Cooperative, Inc. | 2486701 | Accounts Payable | (52.92) | Utilities, Satelite | B |
| 02/24/2013 | Expense | DBT CRD | DirecTV | | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (102.09) | Utilities, Satelite | B |
| 03/09/2013 | Bill Payment (Check) | 3482 | Shiloh Water | 73 | Accounts Payable | (52.55) | Utilities, Satelite | B |
| 03/22/2013 | Bill Payment (Check) | 3500 | Shiloh Water | 73 | Accounts Payable | (51.23) | Utilities, Satelite | B |
| 03/25/2013 | Expense | DIR DBT | Trico Electric Cooperative, Inc. | McGee Ranch Rd. Offices | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (53.89) | Utilities, Satelite | B |
| 04/02/2013 | Expense | DBT CRD | DirecTV | Account No. 25033801 | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (102.09) | Utilities, Satelite | B |
| 04/24/2013 | Expense | DBT CRD | Trico Electric Cooperative, Inc. | | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (102.09) | Utilities, Satelite | B |
| 04/25/2013 | Bill Payment (Check) | DIR DBT | Trico Electric Cooperative, Inc. | 2486701 | Accounts Payable | (52.35) | Utilities, Satelite | B |
| 05/06/2013 | Expense | DBT CRD | Barnetts Propane, L.L.C. | | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (523.68) | Utilities, Satelite | B |
| 05/10/2013 | Bill Payment (Check) | 3640 | Shiloh Water | 73 | Accounts Payable | (111.95) | Utilities, Satelite | B |
| 06/27/2013 | Bill Payment (Check) | 3708 | Shiloh Water | 73 | Accounts Payable | (77.66) | Utilities, Satelite | B |
| 07/01/2013 | Expense | DBT CRD | DirecTV | | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (101.97) | Utilities, Satelite | B |
| 07/10/2013 | Expense | DBT CRD | Barnetts Propane, L.L.C. | | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (56.07) | Utilities, Satelite | B |
| 07/23/2013 | Bill Payment (Check) | 3757 | Shiloh Water | 73 | Accounts Payable | (59.26) | Utilities, Satelite | B |
| 07/24/2013 | Bill Payment (Check) | DIR DBT | Trico Electric Cooperative, Inc. | 2486701 | Accounts Payable | (178.04) | Utilities, Satelite | B |
| 07/24/2013 | Expense | DBT CRD | DirecTV | | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (139.46) | Utilities, Satelite | B |
| 08/14/2013 | Bill Payment (Check) | DIR DBT | Trico Electric Cooperative, Inc. | 2486701 | Accounts Payable | (142.88) | Utilities, Satelite | B |
| 08/24/2013 | Expense | DBT CRD | DirecTV | | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (169.46) | Utilities, Satelite | B |
| 09/05/2013 | Bill Payment (Check) | 3884 | Shiloh Water | 73 | Accounts Payable | (45.00) | Utilities, Satelite | B |
| 09/23/2013 | Bill Payment (Check) | 3940 | Shiloh Water | 73 | Accounts Payable | (43.01) | Utilities, Satelite | B |

Raygarr-01101

| Date | Type | Num | Name | Memo/Description | Split | Amount | P&L | B or P |
|---|---|---|---|---|---|---|---|---|
| 09/26/2013 | Bill Payment (Check) | DIR DBT | Trico Electric Cooperative, Inc. | 2486701 | Accounts Payable | (147.16) | Utilities, Satelite | B |
| 10/16/2013 | Expense | DIR DBT | Trico Electric Cooperative, Inc. | McGee Ranch Rd. Offices | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (110.20) | Utilities, Satelite | B |
| 10/24/2013 | Expense | DBT CRD | DirecTV | | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (31.27) | Utilities, Satelite | B |
| 11/24/2013 | Expense | DBT CRD | DirecTV | | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (74.97) | Utilities, Satelite | B |
| 12/05/2013 | Bill Payment (Check) | DIR DBT | Trico Electric Cooperative, Inc. | 2486701 | Accounts Payable | (95.66) | Utilities, Satelite | B |
| 12/24/2013 | Expense | DBT CRD | DirecTV | | 2. General & Administrative Expenses:Office Expenses:Utilities, Satelite | (74.97) | Utilities, Satelite | B |
| | | | | | **Total** | **(62,922.29)** | | |

Raygarr-01102

# EXHIBIT C

Raygarr-01103

**CHRISTOPHER G. LINSCOTT**
**3443 N. CAMPBELL AVENUE, SUITE 115**
**TUCSON, ARIZONA 85719**
**(520) 884-0176**

**EDUCATION:**

B.A. Psychology, Amherst College, 1980
M.S. Accounting, New York University GBA, 1982
Certified Public Accountant (CPA) 1984
Certified Fraud Examiner (CFE) 1992
Certified Insolvency and Restructuring Advisor (CIRA) 1997

**BACKGROUND:**

1994 - Present
**DIRECTOR**
**Keegan, Linscott & Kenon, P.C.**

Owner of CPA firm. Head of litigation support, bankruptcy and forensic accounting practice for the firm. Other duties include managing corporate financial audits and tax clients.

1990-1993
**DIRECTOR, LITIGATION SUPPORT SERVICES**
**Coopers & Lybrand – Tucson, AZ**

Responsible for work associated with financial aspects of clients and support for attorneys involved in litigation, fraud, receivership cases and bankruptcy work primarily in Arizona. Duties included damage calculation review and preparation, forensic accounting and financial analysis. Other duties included manager responsibilities for financial audits.

1989-1990
**CHIEF FINANCIAL OFFICER**
**Tombstone & Southern Railroad, Inc.**

Served for two years as CFO of start-up real estate and entertainment project in Cochise County. As one of three principals in this project, duties encompassed finance; budgeting, taxes, financial reporting, prospective reporting, capital solicitation, cash management and development of a business plan. Non-financial responsibilities included marketing, public speaking and recruitment of personnel.

1981-1989
**SENIOR AUDIT MANAGER**
**Peat Marwick Main & Co. – New York, NY**
**Peat Marwick Main & Co. – Boston, MA**

Responsibilities included the supervision of fifty staff people on sixty audits for twelve clients. Duties included public and private reporting to the SEC and other third parties, day-to-day management of field work, oral and written presentations to top client management and Board of Directors, technical problem-solving and profit maximization. Areas of industry expertise include real estate, financial institutions, higher education, and manufacturing.

Raygarr-01104

**RANGE OF EXPERIENCE:**

Served as Trustee for various Chapter 11 and Chapter 7 entities primarily in the real estate, hospitality and health care sectors.

Served as Chief Restructuring Officer for corporate commercial entity in Chapter 11.

Served as Examiner in Chapter 11 proceedings focusing on real estate entities and alleged fraud.

Served as "Responsible Party" (Trustee) for Chapter 11 debtor in successful corporate reorganization.

Served as Receiver for corporate commercial entities and financial institutions in Arizona and California.

Served as Liquidating Trustee for corporate commercial entities.

Served as Plan Agent in Chapter 11 proceeding.

Served as Court appointed Special Master in commercial litigation case.

Prepared operating cash forecasts for real estate projects, commercial entities, municipal and non-profit businesses.

Developed financial packages used to obtain project financing for real estate projects and commercial entities.

Assisted in due diligence reviews of corporate commercial acquisitions and joint ventures.

Assisted in the preparation of SEC filings for bankrupt real estate entities.

Served as accountant for various creditor committees in Chapter 11 proceedings to analyze fraudulent conveyance and preference issues and financial viability of ongoing entities.

Reviewed bankruptcy documents of various commercial entities to determine asset liquidation preference and financial viability of ongoing entity.

Served as accountant for various Chapter 11 entities, assisting with various aspects of corporate reorganization.

Provided expert witness testimony, including damage analysis and accounting-related issues in commercial litigation cases dealing with lost profits, owner disputes, securities fraud, employee/employer disputes, personal injury, business interruption claims and various other matters.

Performed various fraud analyses and forensic procedures related to litigation in Ponzi schemes and employee embezzlement schemes.

Constructed damage theories including computer-generated models for commercial businesses involved in litigation.

Analysis of sole and separate property issues, hidden assets and closely held corporations in divorce settlement litigation.

Raygarr-01105

**PROFESSIONAL**
**ORGANIZATIONS:**    Member of the Arizona Society of CPA's, American Institute of Certified Public Accountants, National Association of Certified Fraud Examiners, Association of Insolvency and Restructuring Advisors. Board of Directors of Bashas, Inc.

Raygarr-01106

Exhibit 2

# **Raygarr Damages Summary**
# **Raygarr v EMC (Revised 7-31-18)**

**I.   Raygarr Flood Damages – Raygarr Subcontractors Ultimately Paid by Raytheon**

| | | |
|---|---|---|
| o | Abracadabra – Subrogation Agreement | $820,105.64 |
| o | ASR Transport – Subrogation Agreement | $  17,506.38 |
| o | ATI – Subrogation Agreement | $576,307.47 |
| o | Liberty Metal Framing & Drywall – Subrogation Agreement | $  36,513.00 |
| o | Flooring Systems – Subrogation Agreement | $328,135.42 |
| o | Wiese Painting – Subrogation Agreement | $  12,377.75 |
| o | Faulk Electric | $        270.00 |
| o | SW Rigging | $    2,100.00 |
| o | Babby-Henkel | $  46,102.50 |

**$1,839,418.16**

**Amount Paid by Raytheon**          **- $1,839,418.16**

**0.00**

**II.   Raygarr Damages – Direct Damages:**

| | | |
|---|---|---|
| o | Raygarr direct labor billing following flood: | $ 115,372.50 |
| o | Raygarr out of pocket expenses re flood: | $    3,528.08 |
| o | Raygarr lost OH&P as General Contractor based on flood subcontractor billings (I & III): | $ 267,044.20 |
| o | Sales Tax (on III & V below) @ 5.265% : | $  17,862.18 |
| | **Raygarr Direct Costs – Total** | **$ 403,806.96** |

**III.   Unpaid Subcontractors from Flood**

| | | |
|---|---|---|
| o | AIS | $   1,260.00 |
| o | Precision Power, as of 5/12/15 | $   9,487.00 |
| o | AZ Cabinet Innovations, as of 2/28/17 | $   2,000.00 |
| o | Facility Interiors | $ 34,076.47 |
| o | Tracy's Dynamic Cleaning | $   3,500.00 |
| o | Mobile Mini | $   6,659.42 |
| o | Suddath, as of 2/15/17 | $   3,052.50 |
| o | Advantage Air | $      525.00 |
| o | Pro EM rr | $   7,480.05 |
| | **Total Unpaid Flood Subs** | **$  68,040.44** |
| | **Plus sales tax** | |

Raygarr-000300

**IV.**  **Subcontractors from Non-Flood Projects unable to be paid following Flood**

**Until Settlement with Raytheon in January 2018**

**(Judgments and Promissory Notes)**

- JB Ventures (Note – paid 2/6/18)      $   11,850.00
- Millwork By Design (Note – paid 2/1/18)      $   13,000.00
- RE Lee (Judgment – paid 1/30/18)      $   34,000.00
- Commonwealth (Judgment- paid 1/30/18)      $   16,000.00
- API (Judgment – paid 2/1/18)      $   25,000.00
- Miner SW  (Judgment - unpaid)      $   36,172.69
  - **Total**          **$ 136,022.69**
  - **Plus sales tax**

**V.**  **Additional Unpaid Subs from Non-Flood (unsecured)**

- Western States Fire      $ 43,710.00
- SW Rigging      $ 22,098.00
- Advantage Air      $ 25,953.00
- Tucson Winsupply      $   3,871.72
- Kone Crane      $   4,220.00
- Preventronics      $   8,051.30
- Liner Drywall, as of 2/17/17      $ 43,002.00
- Johnson Controls      $ 16,997.00
- Noble Const (net of Tucson Winsupply)      $ 60,681.65
- Del Sol Excavation      $ 42,637.62
  - **Total**          **$ 271,222.29**
  - **Plus sales tax**

**VI.**  **Loss of present and future Income/Profit to Raygarr**

**by the interruption and destruction of the established family**
**business resulting in Damages, including:**

- Raygarr LLC $107,000 x 5 years:      $ 535,000.00
  -          **$ 535,000.00**

**VII.**  Lost Raytheon Projects:

- Bldg 801 RFEI - $440,000 project at 5% profit: $   22,000.00
- Bldg 864 floor repair - $450,000 at 5% profit:   $   22,500.00
  - **Total**          **$    44,500.00**

Raygarr-000301

**VIII.**   <u>Loans and Finance Charges</u>

Loans required following flood ($400,000.00)

| | |
|---|---|
| Finance Charges on $400,000 loans | $ 169,868.70 |
| Settlement with WGF (Paid 1/30/18) | $  32,500.00 |
| Pre-Judgment Interest (accrued and accruing @ 16% on $106,722.90 | $  59,764.81 |
| **Total** | **$ 262,133.51** |

**TOTAL DAMAGES BEFORE ATTYS FEES & INTEREST:**     **$1,720,725.89**

**IX.**   Attorneys fees and costs pursuant to A.R.S §12-341.01 and
A.R.S. §32-1129.01(M); and

**X.**   Pre-Judgment Interest pursuant to A.R.S. §32-1129.01(K), 1.5 percent per month.

24Z561702.DOCX

Raygarr-000302

Exhibit 3



## Keegan, Linscott & Kenon, PC

Certified Public Accountants | Certified Fraud Examiners | Certified Insolvency and Restructuring Advisors

March 27, 2019

Mr. Melvin Cohen
Mesch, Clark & Rothschild, PC
259 N Meyer Avenue
Tucson, AZ 85701-1090

Dear Mr. Cohen:

Keegan, Linscott & Kenon, P.C. ("KLK") has been engaged to provide financial analysis in the matter of Raygarr, LLC ("Raygarr") v. Employers Mutual Casualty Company dba EMC Insurance Companies ("EMC"). In particular, we have been asked to analyze damages alleged by Raygarr and analyze the expert report of Michael Haugen, issued February 15, 2019 ("Haugen Report").

Based on our review and analysis of information provided, it is our opinion that Raygarr has incurred damages of $1,365,117.69.

### Background

Raygarr is an Arizona Limited Liability Company that performed construction work as a general contractor. Raygarr's primary client was Raytheon with which they had a long term relationship. Raygarr purchased a Commercial General Liability policy ("CGL") and Umbrella Policy with EMC effective February 22, 2014 thru February 22, 2015. Raygarr was contracted by Raytheon on or about July 28, 2014 to perform construction related work for Raytheon Building 842 to renovate and upgrade bathrooms. In accordance with Raytheon's purchase order, Raygarr provided the CGL and Umbrella policy to Raytheon. On September 9, 2014, Raygarr was informed there was a flood at Building 842 that was allegedly caused by failing PVC caps installed by Raygarr's subcontractor. The flooding caused extensive damage to the building and personal property inside it. Raytheon claimed Raygarr was responsible for flood remediation as the general contractor. Raygarr established a claim file with EMC on September 9, 2014.

EMC allegedly represented to Raygarr that flood remediation costs would be covered under Raygarr's insurance policy and Raygarr should proceed with their work as general contractor for the flood remediation. Based on EMC's representations Raygarr performed the remediation and restoration work for Building 842. Raygarr signed contracts with subcontractors and used all its resources to employ its personnel and hire subcontractors to perform remediation work. EMC failed to pay Raygarr for flood remediation and restoration costs incurred by Raygarr and subcontractors. As a result of EMC denying the claim, it caused Raygarr to breach its contracts with subcontractors and Raygarr was ultimately terminated from performing additional work as a general contractor for Raytheon. Raygarr claims the business was



3443 N. Campbell Avenue, Suite 115 | Tucson, Arizona 85719 | Phn 520.884.0176 | Fax 520.884.8767 | www.klkcpa.com

Mr. Melvin Cohen
Mesch, Clark & Rothschild, PC
March 27, 2019
Page 2

financially damaged and was forced to go out of business because of EMC and Raytheon's failure to fully compensate Raygarr for the remediation work it performed. Raygarr filed a lawsuit against EMC on April 5, 2018 for negligent misrepresentation, negligence, equitable estoppel, insurance bad faith/breach of the covenant of good faith and fair dealing, and breach of contract.

## Analysis of Haugen Report

The Haugen Report addresses damages disclosed by Raygarr in the Raygarr Damages Summary schedule dated July 31, 2018[1]. The Raygarr Damages Summary schedule consists of seven damage components. The Haugen Report rebuts each component of damages and our analysis of each component is provided below.

### *Raygarr Direct Damages (Section II)*

Raygarr direct damages consists of four components, labor costs, out of pocket expenses, lost overhead and profit, and sales tax expense. The Haugen Report contends that direct damages (outlined below) are duplicative of the Raygarr lost profits calculation prepared by KLK in our report dated February 15, 2017 (section VI).  Direct damages related to the flood remediation project are not included in KLK's lost profits calculation. The flood remediation work was not a typical, recurring contract with Raygarr but rather a one-off project imposed on Raygarr under the Building 842 Bathroom Contract and the resulting failure of the PVC Caps. It is not considered a recurring source of revenue. KLK's lost profits calculation is based on 2013 net operating income (after accounting for personal expenses recorded on the books) and does not include one-off projects such as the flood remediation. See Exhibit A for a summary of direct damages.

1. Labor Costs:
   The Haugen Report concludes that labor costs of $115,373 are overstated and unsupported. Raygarr progress billings for the flood remediation project include payroll expenses for a total of 2,298.5 hours of work. The Haugen report asserts that Raygarr timecards only support a maximum of 1,157.5 hours spent on flood remediation. Raygarr prepared summarized payroll schedules documenting employee hours worked by week on the remediation project. Payroll hours billed are for weeks ending September 14, 2014 thru November 11, 2014. The labor hours are heavier in the first four weeks (through 10/5/2014) of the restoration and then trickle down. Raygarr's focus during this timeframe was to remediate the flood. Timecards are not available for some of the weeks toward the latter end of the project, nor are they available for Ron Garrison (413 hours), Greg Garrison (382 hours) or Ron Pfeuffer (39 hours). It has been represented to us that Ron Garrison and Greg Garrison had a supervisory role and did not complete timecards. It has been represented to us that payroll hours billed are correct. It is our opinion labor hours appear reasonable and are not overstated.

2. Out of Pocket Expenses:
   Raygarr incurred out of pocket expenses of $3,528.08 for supplies, equipment, services, fuel, food service and miscellaneous items as part of the remediation project. Documentation provided includes receipt support for all out of pocket expenses incurred by Raygarr. The Haugen Report

---

[1] Raygarr-000300-000302

Mr. Melvin Cohen
Mesch, Clark & Rothschild, PC
March 27, 2019
Page 3

does not specifically dispute any of these charges. It is our opinion that out of pocket expenses are reasonable.

3. Lost Overhead & Profit

Raygarr had a Local Agreement with Raytheon with established billing rates which includes a general contractor markup of 14% on subcontracted trade services and materials. Raygarr's direct damages includes lost overhead and profits of $267,044.20, which represents the 14% markup on flood remediation subcontractors' billings that were ultimately paid by Raytheon of $1,839,418.16 and subcontractors that remain unpaid of $68,040.44. The markup represents Raygarr's regularly paid compensation for work performed as the general contractor on Raytheon projects. Raygarr completed the flood remediation project and is entitled to reasonable compensation for work performed. The Haugen Report contends that the Local Agreement with Raytheon was only valid through December 31, 2013 and is only applicable through Raytheon's issuance of a purchase order. Ray Garrison testified that Raytheon "continued to honor the terms of the Local Agreement (billing rates and Subcontractor Markup) when entering into Purchase Orders with Raygarr after December 31, 2013 and never put Raygarr on notice that the terms of the Local Agreement were changed or no longer in effect."[2] Raytheon directed Raygarr to complete the remediation work and did not issue a separate purchase order for that work. The 14% markup rate is based on standard billing practices with Raytheon.

The Haugen Report further suggests that damages are overstated because they fail to consider discounts RMC Consulting negotiated with Raygarr. RMC Consulting was engaged by EMC to inspect damages and provide a recommendation. RMC Consulting recommended some adjustments to Raygarr's billings as a means of settling the insurance claim, which included changing the markup to 10%. EMC ultimately did not pay Raygarr based on RMC recommendations, therefore any recommendation at that time would be irrelevant. The Haugen Report also states that Raygarr damages fail to consider billings Raygarr collected related to the flood remediation. Raygarr has not been paid for any flood remediation work.

4. Sales Tax Expense

Raygarr as general contractor is responsible for paying sales tax on gross proceeds collected from a job. If Raygarr can recover amounts owed to subcontractors for work performed on the flood remediation, then Raygarr is responsible for paying sales tax at a rate of 5.265%. Raygarr will be responsible for paying $3,582.33 in sales tax if they are able to recover amounts owed to flood subcontractors of $68,040.44 (see Section III below).

***Unpaid Subcontractors from Flood (Section III)***

While some of the subcontractors have been paid by Raytheon, there remain several subcontractors Raygarr engaged to perform work on the flood remediation project that remain unpaid. Raygarr's damages include amounts owed to subcontractors that worked on the remediation project of $68,040.44 (see listing at Exhibit A). The Haugen Report concludes this is not a damage given Raygarr has not paid amounts owed to subcontractors. We disagree with Haugen Report assessment, Raygarr engaged these subcontractors to perform work on the flood remediation and therefore has an obligation to see they are

---

[2] Supplemental Affidavit of Raymond L. Garrison, Jr. pg. 7-8.

Mr. Melvin Cohen
Mesch, Clark & Rothschild, PC
March 27, 2019
Page 4

paid for work performed. It has been represented to us that these subcontractors remain unpaid and are still owed amounts as supported by the invoices provided.

The Haugen Report further suggests that claimed amount for unpaid flood subcontractors is overstated and unsupported. The Haugen Report specifically points out that support provided for Facility Interiors, (owed $34,076), was limited to proposals, which does not substantiate claimed amounts and two of the proposals are dated after remediation repairs were complete. The support provided for Facility Interiors consist of three documents titled "proposal", however, the detail within the proposal lists specific days and hours worked. It has been represented to us that documentation provide reflects work performed on flood and outstanding amounts owed Facility Interiors related to flood remediation.

### Subcontractors from Non-Flood Projects (Sections IV and V)
Raygarr's Damages Summary includes subcontractor costs associated with other non-flood Raytheon projects. The nature of these damages are that non-flood subcontractors did not get paid because non-flood project revenue was used by Raygarr to pay flood subcontractors and Raytheon did not pay non-flood project revenue to Raygarr and instead used those funds to pay flood subcontractors. Based on our analysis, we noted that Ray Garrison testified Raytheon withheld $75,390.83 from payments on a non-flood project (the Building 802 project) and Raygarr never received those funds[3]. Raytheon ultimately paid some of the flood subcontractors and in theory used the $75,390.83 owed to Raygarr to fund a portion of those payments. Raygarr's financial records also show they paid a minimum of $35,025.80 in expenses related to the flood remediation. These two amounts total $110,416.63 and would support at least a portion of Sections IV and V of Raygarr's Damages Summary (see Exhibit A).

### Raygarr Lost Profits – Business Closure (Section VI)
On February 15, 2017, KLK issued a report regarding lost profits to Raygarr of $107,762 on an annual basis through the remainder of Raygarr's corporate existence. Raygarr represented that the lost profits would continue for a minimum amount of five years and that amount is included in Raygarr's Damages Summary. The Haugen report criticizes the amount since it was computed on a cash versus accrual basis, there is a lack of historical operating data, and the profitability may not be sustainable. In analyzing lost profits in 2017, we reviewed certain financial and tax records prior to 2013 (when computerized accounting records were first maintained). Raygarr had made profits previously and Raygarr's revenues and business were growing. We stand by that initial report that was done and the conclusions reached (See Exhibit A).

### Lost Raytheon Projects
Raygarr's Damages Summary included $44,500 of lost profit projects related to jobs canceled by Raytheon. The Haugen Report contends that these amounts are duplicative as they are already included in KLK's lost profit calculation. We agree with the Haugen Reports assessment that future projects are already captured in our lost profits calculation and we therefore do not associate a damage to lost Raytheon projects.

### Loan and Finance Charges
Raygarr's Damages Summary includes $262,133.51 in costs related to loan financing. Prior to the flood, Raygarr had entered into loan factoring arrangements with World Global and LG Funding for cash flow to

---

[3] Deposition of Raymond Leo Garrison, Jr. January 25, 2019 pg. 78

Raygarr-01197

Mr. Melvin Cohen
Mesch, Clark & Rothschild, PC
March 27, 2019
Page 5

fund their growth in operations. LG Funding had been paid off prior to the flood and certain World Global loans were still outstanding. In September 2014 through March 2015, Raygarr borrowed an additional $400,000 in gross loans. However, the loans in these instances were not to manage growth but to deal with loss of work from Raytheon and cancelled projects (such as Building 801 RFEI and Building 864 Floor Repair) and to deal with the resulting business losses which approximated $181,000 from September 2014 through December 2014. In addition, there were losses in 2015. During this time period, Raytheon was in an alternating state of contracting with Raygarr on projects and having Raytheon cancel Raygarr projects due to the issues surrounding the flood and the non-payment of flood subcontractors. Raygarr alleges that this was a result of EMC not covering these costs under the insurance policy. In our opinion, the loan related costs are properly included as damages (See Exhibit A).

<u>Conclusion</u>

Based on our review and analysis of information provided, it is our opinion that Raygarr has incurred damages of $1,365,117.69.

We reserve the right to supplement our report should additional information be provided in this case. Any questions regarding this report may be directed to Christopher Linscott who will serve as the expert in this matter. We have enclosed Christopher Linscott's curriculum vitae as Exhibit B, and his Summary of Expert Witness Testimony covering 2015 to 2019 as Exhibit C.

Sincerely,

*Keegan, Linscott & Kenon, P.C.*

Keegan, Linscott & Kenon, P.C.

Attachments: Exhibits A through C

# EXHIBIT A

Raygarr-01199

Raygarr v. EMC
Summary of Raygarr Damages
Exhibit A

**I.   Raygarr Flood Damages – Raygarr Subcontractors Ultimately Paid by Raytheon**

| | |
|---|---:|
| Abracadabra – Subrogation Agreement | $   820,105.64 |
| ASR Transport – Subrogation Agreement | 17,506.38 |
| ATI – Subrogation Agreement | 576,307.47 |
| Liberty Metal Framing & Drywall – Subrogation Agreement | 36,513.00 |
| Flooring Systems – Subrogation Agreement | 328,135.42 |
| Wiese Painting – Subrogation Agreement | 12,377.75 |
| Faulk Electric | 270.00 |
| SW Rigging | 2,100.00 |
| Babby-Henkel | 46,102.50 |
| Total | $ 1,839,418.16 |
| Amount Paid by Raytheon | (1,839,418.16) |
| | $            - |

**II.  Raygarr Damages - Direct Damages**

| | |
|---|---:|
| Raygarr direct labor billing following flood: | $   115,372.50 |
| Raygarr out of pocket expenses re: flood: | 3,528.08 |
| Raygarr lost OH&P as General Contractor based on flood | |
| subcontractor billings (I & III) | 267,044.20 |
| Sales Tax (on III below) @ 5.265% | 3,582.33 |
| **Total Direct Damages** | **$   389,527.11** |

**III.  Unpaid Subcontractors from Flood**

| | |
|---|---:|
| AIS | $     1,260.00 |
| Precision Power, as of 5/12/15 | 9,487.00 |
| AZ Cabinet Innovations, as of 2/28/17 | 2,000.00 |
| Facility Interiors | 34,076.47 |
| Tracy's Dynamic Cleaning | 3,500.00 |
| Mobile Mini | 6,659.42 |
| Suddath, as of 2/15/17 | 3,052.50 |
| Advantage Air | 525.00 |
| Pro EM | 7,480.05 |
| **Total Unpaid Flood Subs** | **$     68,040.44** |
| **Plus sales tax** | |

**IV and V.  Subcontractors from Non-Flood Projects**

| | |
|---|---:|
| Non-Flood project funds withheld by Raytheon | $     75,390.83 |
| Flood remediation expenses paid Raygarr | 35,025.80 |
| **Total** | **$   110,416.63** |

**VI.  Loss of present and future Income/Profit to Raygarr**
**by the interruption and destruction of the established family**
**business resulting in Damages, including:**

| | |
|---|---:|
| Raygarr LLC 107,000 x 5 years: | **$   535,000.00** |

**VII. Lost Raytheon Projects:**      $            -

**VIII. Loans and Finance Charges**

| | |
|---|---:|
| Loans required following flood ($400,000.00) | |
| Finance Charges on $400,000 loans | $   169,868.70 |
| Settlement with WGF (Paid 1/30/18) | 32,500.00 |
| Pre-Judgment Interest (accrued & accruing @ 16% on $106,722.90) | 59,764.81 |
| **Total Loan and Finance Charges** | **$   262,133.51** |

**TOTAL DAMAGES BEFORE ATTYS FEES & INTEREST:**      **$ 1,365,117.69**

Raygarr-01200

# EXHIBIT B

Raygarr-01201

**CHRISTOPHER G. LINSCOTT**
**3443 N. CAMPBELL AVENUE, SUITE 115**
**TUCSON, ARIZONA 85719**
**(520) 884-0176**

| | |
|---|---|
| **EDUCATION:** | B.A. Psychology, Amherst College, 1980 |
| | M.S. Accounting, New York University GBA, 1982 |
| | Certified Public Accountant (CPA) 1984 |
| | Certified Fraud Examiner (CFE) 1992 |
| | Certified Insolvency and Restructuring Advisor (CIRA) 1997 |

**BACKGROUND:**

1994 - Present
**DIRECTOR**
**Keegan, Linscott & Kenon, P.C.**

Owner of CPA firm. Head of bankruptcy and reorganization, litigation support, and forensic accounting practice for the firm. Includes Tucson and Scottsdale offices practice leader.

1990-1993
**DIRECTOR, LITIGATION SUPPORT SERVICES**
**Coopers & Lybrand – Tucson, AZ**

Responsible for work associated with financial aspects of clients and support for attorneys involved in litigation, fraud, receivership cases and bankruptcy work primarily in Arizona. Duties included damage calculation review and preparation, forensic accounting and financial analysis. Other duties included manager responsibilities for financial audits.

1989-1990
**CHIEF FINANCIAL OFFICER**
**Tombstone & Southern Railroad, Inc.**

Served for two years as CFO of start-up real estate and entertainment project in Cochise County.  As one of three principals in this project, duties encompassed finance; budgeting, taxes, financial reporting, prospective reporting, capital solicitation, cash management and development of a business plan. Non-financial responsibilities included marketing, public speaking and recruitment of personnel.

1981-1989
**SENIOR AUDIT MANAGER**
**Peat Marwick Main & Co. – New York, NY**
**Peat Marwick Main & Co. – Boston, MA**

Responsibilities included the supervision of fifty staff people on sixty audits for twelve clients. Duties included public and private reporting to the SEC and other third parties, day-to-day management of field work, oral and written presentations to top client management and Board of Directors, technical problem-solving and profit maximization. Areas of industry expertise include real estate, financial institutions, higher education, and manufacturing.

Raygarr-01202

**RANGE OF
EXPERIENCE:**

Served as Trustee for various Chapter 11 and Chapter 7 entities primarily in the real estate, hospitality and health care sectors.

Served as Chief Restructuring Officer for corporate commercial entity in Chapter 11.

Served as Examiner in Chapter 11 proceedings focusing on real estate entities and alleged fraud.

Served as "Responsible Party" (Trustee) for Chapter 11 debtor in successful corporate reorganization.

Served as Receiver for corporate commercial entities and financial institutions in Arizona and California.

Served as Liquidating Trustee for corporate commercial entities.

Served as Plan Agent in Chapter 11 proceeding.

Served as Court appointed Special Master in commercial litigation case.

Prepared operating cash forecasts for real estate projects, commercial entities, municipal and non-profit businesses.

Developed financial packages used to obtain project financing for real estate projects and commercial entities.

Assisted in due diligence reviews of corporate commercial acquisitions and joint ventures.

Assisted in the preparation of SEC filings for bankrupt real estate entities.

Served as accountant for various creditor committees in Chapter 11 proceedings to analyze fraudulent conveyance and preference issues and financial viability of ongoing entities.

Reviewed bankruptcy documents of various commercial entities to determine asset liquidation preference and financial viability of ongoing entity.

Served as financial advisor for various Chapter 11 entities, assisting with various aspects of corporate reorganization.

Provided expert witness testimony, including damage analysis and accounting-related issues in commercial litigation cases dealing with lost profits, owner disputes, securities fraud, employee/employer disputes, personal injury, business interruption claims and various other matters.

Performed various fraud analyses and forensic procedures related to litigation in Ponzi schemes and employee embezzlement schemes.

Constructed damage theories including computer-generated models for commercial businesses involved in litigation.

Analysis of sole and separate property issues, hidden assets and closely held corporations in divorce settlement litigation.

Raygarr-01203

**PROFESSIONAL**
**ORGANIZATIONS:**      Member of the Arizona Society of CPA's, American Institute of Certified Public
Accountants, National Association of Certified Fraud Examiners, Association of Insolvency
and Restructuring Advisors. Board of Directors of Bashas, Inc.

Raygarr-01204

EXHIBIT C

Raygarr-01205

CHRISTOPHER G. LINSCOTT, CPA, CFE, CIRA
SUMMARY OF EXPERT WITNESS TESTIMONY
2015 - 2019

| YEAR | PLAINTIFF/PETITIONER | DEFENDANT/RESPONDENT | ISSUE | TESTIMONY RENDERED | TRIER OF FACT | CLIENT ATTORNEY / CLIENT ATTORNEY FIRM | OPPOSING COUNSEL / OPPOSING FIRM |
|---|---|---|---|---|---|---|---|
| 2018 | UNITED STATES OF AMERICA* | SETH NICHOLS | RESTITUTION | TRIAL | JUDGE | MIKE JETTE | MIKE HARWIN |
| 2018 | CLAY AND KAREN PARSONS* | HUGH AND JANE NICHOLS | FRAUD | TRIAL | JUDGE | FRED PETERSEN, MESCH, CLARK & ROTHSCHILD, P.C. | GERMAN YUSUFOV, YUSUFOV LAW FIRM PLLC |
| 2018 | REILLY* | SIERRA CAMPANA, LLC ET AL. | BREACH OF CONTRACT, ETC... | TRIAL | N/A | MEL COHEN, MESCH, CLARK & ROTHSCHILD, P.C.... | TERRY JACKSON |
| 2018 | TARGET CORPORATION* | SPRINT SPECTRUM, LP | BREACH OF CONTRACT | DEPOSITION | N/A | PAUL LOUCKS, MESCH, CLARK & ROTHSCHILD, P.C. | JENNIFER AXEL, POLSINELLI, PC |
| 2018 | SERRANO* | FARM CREDIT SERVICES SOUTHWEST | BREACH OF FIDUCIARY DUTY, ETC... | DEPOSITION | N/A | TONY FREEMAN, FREEMAN LAW | ROBERT MCKIRGAN, LEWIS ROCA |
| 2018 | STUART BRODSKY* | ESTATE OF HELEN BRODSKY ET AL. | BREACH OF FIDUCIARY DUTY | TRIAL | JUDGE | GEORGE KRAUJA, FENNEMORE CRAIG | ARLENE LEONI |
| 2017 | RAYTHEON | RAYGARR, LLC* | BREACH OF CONTRACT | TRIAL | JURY | MEL COHEN, MESCH, CLARK & ROTHSCHILD | JOHN RICHARDSON, DECONCINI MCDONALD ET AL. |
| 2017 | ANTONIA FLORES* | ANA PAREDES | BREACH OF FIDUCIARY DUTY | TRIAL | JUDGE | DAVID JUAREZ | GREGORY DROEGER |
| 2017 | SONORAN DESERT LAND INVESTORS, LLC* | CPF VASEO ASSOCIATES | CHAPTER 11 INTEREST RATE | TRIAL | JUDGE | MICHAEL MCGRATH, MESCH, CLARK & ROTHSCHILD, P.C. | TODD BURGESS, GALLAGHER & KENNEDY |
| 2017 | SONORAN DESERT LAND INVESTORS, LLC* | CPF VASEO ASSOCIATES | CHAPTER 11 INTEREST RATE | DEPOSITION | N/A | MICHAEL MCGRATH, MESCH, CLARK & ROTHSCHILD, P.C. | TODD BURGESS, GALLAGHER & KENNEDY |
| 2017 | MARC WICHANSKY | DAVID & KARINA ZORVINE* | CHAPTER 11 FEASIBILITY AND INTEREST RATE | DEPOSITION | N/A | TOM SALERNO, STINSON LEONARD STREET | MICHAEL SIMKUN, CALLAGY LAW |
| 2017 | RAYTHEON | RAYGARR, LLC* | BREACH OF CONTRACT | DEPOSITION | N/A | MEL COHEN, MESCH, CLARK & ROTHSCHILD | JOHN RICHARDSON, DECONCINI MCDONALD ET AL. |
| 2017 | SOLCITO INVESTMENTS, LLC* | AMERICAN FAMILY INSURANCE | BREACH OF CONTRACT, BAD FAITH | DEPOSITION | N/A | ALISON CHASE, KELLER ROHRBACK, LLP | LYNN ALLEN, TYSON & MENDES |
| 2016 | ARIZONA HOMETOWN HAULING ET AL.* | DANIEL RAUCHI ET AL. | CORPORATE DISSOLUTION | TRIAL | JURY | GEORGE KRAUJA, FENNEMORE CRAIG JOHN BAADE | BILL POORTEN, SNELL & WILMER |
| 2016 | PIMIENTOS SELECTOS S.A. DE C.V.* | POLY-AG CORP ET AL. | BREACH OF WARRANTY DEFECTIVE PRODUCT | TRIAL | JURY | JASON SANTANA | DANIELLE LOSS, HORTON, OBERRECHT ET AL. |
| 2016 | BILL JOHNSON'S RESTAURANTS, INC.* | PLATTNER, SCHNEIDMAN ET AL. | BREACH OF FIDUCIARY DUTY PROFESSIONAL MALPRACTICE | DEPOSITION | N/A | SEBALY STAMPS (DECONCINI) MARK LAMMERS (RUSING, LOPEZ) | CHARLES PRICE, DICKINSON WRIGHT |
| 2016 | HANNAH* | MADRID | BREACH OF FIDUCIARY DUTY, ELDER ABUSE | TRIAL | JUDGE | MEL COHEN, MESCH, CLARK & ROTHSCHILD, P.C. | TERRY JACKSON, LAW OFFICES OF TERRENCE JACKSON |
| 2016 | BEST AMERICAN DESTINATIONS, LLC | HWALBAY BAJ ENTERPRISES, INC.* | BREACH OF CONTRACT | ARBITRATION | ARBITRATOR | LONNIE WILLIAMS, STINSON LEONARD STREET | DONALD PRUNTY, GREENBERG TRAURIG |
| 2016 | BILLY & NORA MAYNARD* | JACK AND JERRY MAYNARD ET AL. | CORPORATE DISSOLUTION | ARBITRATION | ARBITRATOR | MICHAEL MCGRATH, MESCH, CLARK & ROTHSCHILD, P.C. | KEVIN ESTEVEZ, LANG & KLAIN, P.C. |
| 2016 | PIMIENTOS SELECTOS S.A. DE C.V.* | POLY-AG CORP ET AL. | BREACH OF WARRANTY DEFECTIVE PRODUCT | DEPOSITION | N/A | JASON SANTANA | DANIELLE LOSS, HORTON, OBERRECHT ET AL. |
| 2016 | ARIZONA HOMETOWN HAULING ET AL.* | DANIEL RAUCHI ET AL. | CORPORATE DISSOLUTION | DEPOSITION | N/A | JOHN BAADE | BILL POORTEN, SNELL & WILMER |
| 2015 | DAVID M. REAVES, TRUSTEE | JACK D. ROSE & VANESSA PALMA ROSE* | NON-DISCHARGEABILITY | TRIAL | JUDGE | FREEMAN HUBER LAW, PLLC | FORRESTER & WORTH, PLLC |
| 2015 | BEST AMERICAN DESTINATIONS, LLC | HWALBAY BAJ ENTERPRISES, INC.* | BREACH OF CONTRACT | ARBITRATION | ARBITRATOR | CARRIE FRANCIS, STINSON LEONARD STREET | DONALD PRUNTY, GREENBERG TRAURIG |
| 2015 | GIOVANNA MUSCARELLO ET AL.* | HILL D'AMORE, LTD. & JOHN D'AMORE | NEGLIGENCE, BREACH OF CONTRACT ETC.. | DEPOSITION | N/A | AARON HUBER, HUBER BARNEY, PLLC | ROB SHULL, DICKINSON WRIGHT |
| 2015 | CALVARY CHAPEL OF PRESCOTT | BANK OF THE WEST* | CHAPTER 11 PLAN FEASIBILITY AND TILL | DEPOSITION | N/A | KELLY SINGER, QUARLES & BRADY | HAROLD CAMPBELL, CAMPBELL & COOMBS |

* Denotes client

Exhibit 4



Keegan, Linscott & Kenon, PC

Certified Public Accountants | Certified Fraud Examiners | Certified Insolvency and Restructuring Advisors

June 10, 2019

Mr. Melvin Cohen
Mesch, Clark & Rothschild, PC
259 N Meyer Avenue
Tucson, AZ 85701-1090

Dear Mr. Cohen:

Keegan, Linscott & Kenon, P.C. ("KLK") has been engaged to provide financial analysis in the matter of Raygarr, LLC ("Raygarr") v. Employers Mutual Casualty Company dba EMC Insurance Companies ("EMC"). In particular, we have been asked to provide supplemental analysis to our original report dated March 27, 2019.

The supplemental analysis relates to information provided by Raytheon in response to Raygarr's Notice of Deposition by Written Questions to Raytheon Company. In conjunction with the Notice, Raytheon provided a spreadsheet of projects for construction or renovation of facilities awarded by Raytheon between January 1, 2015 and June 4, 2019 that were awarded to general contractors in Tucson with project amounts of $1 million or less.

The information provided by Raytheon showed project awards of the following:

| | |
|---|---|
| Year 2015 | $ 2,317,140 |
| Year 2016 | $ 7,154,421 |
| Year 2017 | $16,520,396 |
| Year 2018 | $10,331,146 |
| YTD June 4, 2019 | $ 8,685,791 |

Raygarr's work for Raytheon primarily focused on projects that were less than $1 million. This was the niche in which Raygarr operated. In our report dated March 27, 2019, we opined that one of Raygarr's damage components was lost profits of $107,000 per year for five years. This damage period would have been from September 2014 through September 3, 2019. The loss was also predicated on approximately $5 million in revenue annually for Raygarr, the majority of which would have come from Raytheon projects.



Mr. Melvin Cohen
Mesch, Clark & Rothschild, PC
June 10, 2019
Page 2

The level of revenue noted above by Raytheon for projects that Raygarr would have been qualified to receive, would have been sufficient to support the damage analysis and opinions previously expressed in our March 27, 2019 report for the years 2016 – 2019. In 2015, Raygarr earned approximately $1.6 million in revenue despite the loss of Raytheon contracts during that period of time. As a result, the opinions previously expressed related to lost profits in our March 27, 2019 report remain unchanged and are supported by the information provided by Raytheon.

We reserve the right to supplement our report should additional information be provided in this case. Any questions regarding this report may be directed to Christopher Linscott who will serve as the expert in this matter.

Sincerely,

Keegan, Linscott & Kenon, P.C.

Exhibit 5

Page 1

1              IN THE DISTRICT COURT OF THE STATE OF ARIZONA
2                  IN AND FOR THE COUNTY OF MARICOPA
3
4       Raygarr, LLC, an Arizona limited  )
        liability company,                )
5                                         )
                              Plaintiff,  )
6                                         ) Case No.:
            vs.                           ) 4:18-cv-00246-RM
7                                         )
        Employers Mutual Casualty Company )
8       dba EMC Insurance Companies,      )
        a foreign corporation,            )
9                                         )
                             Defendants,  )
10      _____)
11
12
13
14          DEPOSITION OF CHRISTOPHER G. LINSCOTT, CPA, CFE, CIRA
15                          Tucson, Arizona
                            April 30, 2019
16                            8:00 a.m.
17
18
19
20      Prepared by:
        Vicki L. O'Ceallaigh Champion, CR
21      Certificate No. 50534
22
23          Job No. CS3287483
24      Prepared for:
25      (Certified copy)

Veritext Legal Solutions

Page 10

1    A.  No.
2    Q.  My understanding is that they haven't been produced,
3  in part, because it would be very cumbersome to do so based
4  on the quantity?
5    A.  I'm not sure why they haven't been produced, but I
6  don't think they would be helpful in the litigation either
7  for me or for EMC's expert.
8    Q.  Do you recall the quantity?  Like how much paper are
9  we talking about?
10    A.  I think if you think of a schoolbook, high school
11  wide-ruled spiralbound white line paper, it's maybe an inch
12  or two thick.  I think there were one of those or two of
13  those for each year, so maybe three to six different
14  spiralbound binders.
15    Q.  Okay.  And recorded in those binders was what in
16  categories of information?
17    A.  Well, it was supposed to be, I think, the financial
18  activity of Raygarr in terms of cash receipts and
19  disbursements and notations on those types of things, almost
20  like a manual accounting ledger.  That's what I believe it
21  was supposed to be.
22    Q.  What made it kind of unusable or unhelpful for your
23  purposes?
24    A.  Well, it didn't necessarily tie to anything in terms
25  of either bank statements or tax returns.  There were no

Page 11

1  subtotals that I recall in terms of categories of expenses or
2  balance sheet type amounts or those types of things.  My
3  recollection was that we try to look at it and see if it tied
4  to anything or would give us information that was useful in
5  coming up with the revenue and expenses of Raygarr, but we
6  couldn't -- we determined we couldn't rely on it and that it
7  wasn't helpful in terms of tying to other more summarized
8  information that we had in tax returns or that type of
9  thing.
10    Q.  Okay.  So is it fair to say that the best
11  information that we have about Raygarr's financial situation
12  in 2010 through 2012 are the tax returns, the tax returns of
13  Ray Garrison?
14    A.  Well, I didn't really end up utilizing 2010 or 2011,
15  but that's probably the best information available if someone
16  wanted to look at those years.
17    Q.  And tax returns are essentially sworn statements
18  about the financial status of Raygarr and Ray Garrison; is
19  that fair?
20    A.  Yes.
21    Q.  And so we do also have tax returns for 2013 and
22  2014, correct?
23    A.  Correct.
24    Q.  Would those also be the best information we have to
25  understand what the financial status of what Raygarr was in

Page 12

1  those years?
2    A.  No.  It's part of the information, but 2013 forward,
3  Raygarr started using actually an accounting software package
4  called QuickBooks, so there is actually more reliable
5  information that's contained in the QuickBooks.
6    Q.  Okay.  So is it your testimony that the QuickBooks
7  reports are more reliable than the information contained on
8  the tax returns?
9    A.  I think you have to look at them in conjunction with
10  each other.
11    Q.  Well, we are going to see, when we get to that
12  point, that for 2013 there is actually a pretty significant
13  discrepancy in the tax returns versus some of the QuickBooks
14  reports; is that fair?
15    A.  There are discrepancies.  I agree with you.
16    Q.  So, in rendering your opinions, is it true that even
17  though the tax returns are sworn statements, you relied more
18  on the QuickBooks reports as opposed to the tax returns that
19  were submitted by Ray Garrison in 2013?
20    A.  I don't know that I relied on them more, but I used
21  the tax return as one of my starting points and then looked
22  at the detailed information in QuickBooks to see how that
23  related to the tax returns.  There were differences, and I
24  needed to understand why there were differences.  I
25  investigated that and in my opinion determined that there

Page 13

1  were things that weren't treated properly on the tax return
2  that needed to be adjusted.
3    Q.  So let's kind of back up a little bit, because we
4  were talking about kind of the universe of information that
5  you had back in February of 2017 in rendering that initial
6  opinion.  We talked about the things you reviewed by -- it
7  sounds like there was additional information you took into
8  account in rendering those opinions.
9       Can you go over that whether it was communications
10  with Counsel, communications with Mr. Garrison?
11    A.  Well, I certainly had conversations with
12  Mr. Garrison throughout the process, whether I was looking at
13  any of the financial information, whether it was the
14  spiralbound notebooks or the tax returns or the QuickBooks.
15  I had conversations with him about those records and the
16  income and expenses in those items.  I also had conversations
17  with a gentleman named Todd Bicone, B-I-C-O-N-E, who was the
18  accountant hired by Raygarr to get the Raygarr books and
19  records in an accounting system starting in 2013.  So I had
20  conversations with him.
21       I'm assuming I had -- I recall having periodic
22  conversations with Counsel about obtaining records and status
23  of records and those types of things, so that's a normal part
24  of the expert process to have those conversations.
25    Q.  What information did you gain from your

4 (Pages 10 - 13)

Page 30

1    Q.  There would be a way for you to know, maybe someone
2  else, maybe the person who actually filled out the time card
3  may be able to speak to it, but as far as your review and
4  analysis of it, if there were a water remediation project and
5  a different project going on at the same time at 842,
6  wouldn't you need to be provided the information of which was
7  related to remediation in order for you to reach your
8  conclusions?
9    A.  I guess if there was a question relative to those
10  times, I might need additional information.
11    Q.  I think you are still on page 1195 of Exhibit 3.
12    A.  Yes.
13    Q.  In that Number 1, "Labor Costs," first paragraph,
14  the second to last sentence says, "It has been represented to
15  us that payroll hours billed are correct."
16      Did I read that correctly?
17    A.  Yes.
18    Q.  So is that a representation from Barbara Kunz?
19    A.  We had a conversation with Barbara and asked her
20  where the information came from and to verify that it was
21  correct, she represented to us that subsequently that she had
22  a conversation with Mr. Garrison and that those payroll hours
23  were related to the 842 Flood Remediation Project, so we
24  asked that that be verified.
25    Q.  So Barbara Kunz told you that she talked to -- is

Page 31

1  that Ray Garrison?
2    A.  I believe so.  Yes.
3    Q.  To verify the accuracy of the labor hours?
4    A.  Correct.
5    Q.  But you didn't actually have that conversation with
6  Mr. Garrison yourself?
7    A.  I did not.
8    Q.  Then the next sentence here says, "It is our opinion
9  labor hours appear reasonable and are not overstated."
10      Did I read that right?
11    A.  You did.
12    Q.  And what is that opinion based on?
13    A.  Well, I don't think there is any dispute between our
14  report and the Haugen Report relative to the 1,157 hours.  We
15  seem to both agree on that.  The Ron Garrison and Greg
16  Garrison hours, the supervisory people, that approximates
17  800 hours between the two of them.  They are supervisory
18  people in nature.  That's typically been their role anyway.
19  If you take those hours, 800 hours, roughly, and add it to
20  the 1,157 hours, you are almost at 2,000 hours out of the
21  2,300 hours that -- that's the bulk of the hours.
22      ==It's roughly 90 percent of the hours that you can==
23  ==verify under that scenario.  It's clear that some timecards==
24  ==beyond the first month don't appear to exist, but in my==
25  ==opinion, if you can verify or be comfortable with 90 percent==

Page 32

1  ==of the hours, I really don't have a problem with the damage==
2  ==in total.  That's what my opinion is based on.==
3    Q.  So you are not giving an opinion about what it
4  takes, how many hours does it take, to remediate Raytheon?
5  That's not what this is saying?
6    A.  No.
7    Q.  You are just saying, based on the summary
8  information that was provided by Plaintiff's Counsel, the
9  amount of hours that were in that documentation seems
10  reasonable to you?
11    A.  And the rate per hour, yes.  Therefore, I think the
12  $115,373, as a labor cost damage, is reasonable and
13  supportable.
14    Q.  Do you know how Ron Garrison, Greg Garrison, and Ron
15  Pfeuffer -- is that how you pronounce it?
16    A.  I'm not sure.
17    Q.  Pfeuffer?  Do you know how they kept track of their
18  hours?
19    A.  I don't specifically know.
20    Q.  So let me know if I have this correct.  The file
21  contains 1,157.5 hours of timecards that specify they are
22  related to the flood remediation, correct?
23    A.  Correct.  Yes.
24    Q.  And you have been provided documents that state that
25  Ron Garrison, Greg Garrison, and Ron Pfeuffer have worked on

Page 33

1  the water remediation the number of hours stated in your
2  report?
3    A.  Correct.
4    Q.  That adds up to approximately 90 percent of what the
5  Plaintiffs have claimed as their labor costs?
6    A.  Correct.
7    Q.  So your opinion is that the other 10 percent is,
8  although not specifically supported by any documentation, is
9  still reasonable to be claimed?
10    A.  Yes, that's correct.
11    Q.  Skipping over to the next page in the topic of Lost
12  Overhead and Profit, in your opinion on Exhibit 3, page 1196,
13  you discuss a local agreement between Raygarr and Raytheon
14  that established billing rates?
15    A.  Yes.
16    Q.  Do you have an opinion as to whether that local
17  agreement was still in effect or if the remediation work was
18  done pursuant to that agreement?
19    A.  The answer is "yes."  It's my understanding that
20  that was still the working agreement between Raytheon and
21  Raygarr at the point in time this work was done.
22      (Whereupon, Mr. Lopez left the deposition suite at
23  9:03 a.m.)
24  BY MS. FREEMAN:
25    Q.  What is that understanding based on?

9 (Pages 30 - 33)

Exhibit 6

1   MESCH CLARK ROTHSCHILD
2   259 North Meyer Avenue
    Tucson, Arizona 85701
3   Phone: (520) 624-8886
    Fax:   (520) 798-1037
4   Email: mcohen@mcrazlaw.com
5   Email: plopez@mcrazlaw.com

6   By:    Melvin C. Cohen, #003728
7          Patrick J. Lopez, #019183
           78007-8/blc
8   Attorneys for Plaintiff

9

10                  **UNITED STATES DISTRICT COURT**

11                       **DISTRICT OF ARIZONA**

12

13   RAYGARR, LLC, an Arizona limited        **Case No.  4:18-cv-00246-RM**
     liability company,
14                                           **PLAINTIFF'S 1st**
15                       Plaintiff,          **SUPPLEMENTAL DISCLOSURE**
                                             **STATEMENT**
16   v.

17                                           Assigned to Hon. Rosemary Márquez
     EMPLOYERS MUTUAL CASUALTY
18   COMPANY DBA EMC INSURANCE
     COMPANIES, a foreign corporation,
19
20                       Defendant.

21

22        Plaintiff Raygarr, LLC, by and through undersigned counsel, hereby supplements its

23   Amended Responses to the Court's Mandatory Initial Discovery Requests with the

24   following additional information reflected in **bold type**.

25        1.     State the names and, if known, the addresses and telephone numbers of all

26   persons who you believe are likely to have discoverable information relevant to any party's

1      L.      Affidavit of Gregory Garrison dated 9/21/17;

2      M.      1st Supplemental Affidavit of Gregory Garrison dated 9/29/17;

3      N.      2nd Supplemental Affidavit of Gregory Garrison dated 10/20/17.

4      3.      List the documents, electronically stored information ("ESI"), tangible things,

5   land, or other property known by you to exist, whether or not in your possession, custody or

6   control, that you believe may be relevant to any party's claims or defenses.  To the extent

7   the volume of any such materials makes listing them individually impracticable, you may

8   group similar documents or ESI into categories and describe the specific categories with

9   particularity.   Include in your response the names, and if known, the addresses and

10   telephone numbers of the custodians of the documents, ESI, or tangible things, land or other

11   property that are not in your possession, custody or control.  For documents and tangible

12   things in your possession, custody or control, you may produce them with your response, or

13   make them available for inspection on the date of the response, instead of listing them.

14   Production of ESI will occur in accordance with paragraph C.2 below.

15      **RESPONSE:**

16      A.      2/22/14 - EMC CGL Policy issued to Raygarr (Raygarr-000001-55);

17      B.      2/22/14 – EMC Umbrella Policy issued to Raygarr (Raygarr-000056-104);

18      C.      9/10/14 – Letter from EMC to Raygarr LLC (Raygarr-000105-106);

19      D.      9/15/14 – Fax transmittal from Raygarr to Fabian Mireles with copies of
20              Certificates of Liability Insurance etc. (Raygarr-000107-124);

21      E.      9/23/14 - Letter from Dan Misheck to Dave Girard at Union Standard
22              Insurance (Raygarr-0001256-126);

23      F.      9/23/14 – Letter from Mel Cohen to Fabian Mireles with billings statements
24              following walk-through at Raytheon (Raygarr-000127-129);

25      G.      9/23/14 – Letter from Dan Misheck to Mel Cohen (Raygarr-000130-131);

26

H.      9/25/14 Email from Dan Misheck to Scott Bowker at FM Global with attachment (Raygarr-000132-136);

I.       10/2/14 – Letter from Mel Cohen to Dan Misheck (Raygarr-000137-138);

J.      10/14/14 – Letter from Mel Cohen to Dan Misheck (Raygarr-000139);

K. 10/17/14 – Letter from Mel Cohen to Jonathan Sullivan (Raygarr-000234-235);

L.      11/5/14 – Letter from Mel Cohen to John Elardo (Raygarr-000140-141).

M.      11/13/14 – Letter from Mel Cohen to John Elardo (Raygarr-000142-143);

N.      11/19/14 – Letter from Mel Cohen to John Elardo (Raygarr-000144-145);

O.      11/26/14 – Letter from Mel Cohen to John Elardo (Raygarr-000146-147);

P.      1/15/15 – Letter from John Elardo to Mel Cohen (Raygarr-000148-154);

Q.      3/23/15 – Letter from Mel Cohen to John Elardo (Raygarr-000155-162);

R.      5/01/15 – Letter from John Elardo to Mel Cohen (Raygarr-000163-167);

S.      5/22/15 – Letter from Mel Cohen to John Elardo with attachments (Raygarr-000168-221);

T.      6/16/15 – Letter from John Elardo to Mel Cohen (Raygarr-000222-224);

U.      7/15/2015 – Email from Mel Cohen to John Elardo and John Kastner with Raygarr Claim Letter of July 13, 2015; (Raygarr-000236-241)

V.      9/04/15 – Letter from Spencer Smith to Fabian Mireles (Raygarr-000225-226);

W.      3/10/16 – Letter from John Elardo to Mel Cohen (Raygarr-000227-233);

X.      Affidavits of Ray Garrison and Greg Garrison (see ¶2.H-N above) (Raygarr-000242-299);

Y. Damages Summary and supporting documentation (Raygarr-000300-578);

Z.      Any and all documents identified in disclosure statements from any and all parties in the litigation brought against Raygarr by Raytheon (C20160590), and