**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raygarr LLC, | No. CV-18-00246-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| Employers Mutual Casualty Company, | |
| Defendant. | |

Trial in the above-captioned case is set to begin on February 8, 2021.  (Doc. 155.)  In advance of trial, Plaintiff Raygarr LLC ("Plaintiff" or "Raygarr") and Defendant Employers Mutual Casualty Company ("Defendant" or "EMC") filed Motions in Limine ("MILs") (Docs. 122-134), and Defendant filed a Motion to Amend the Joint Proposed Pretrial Order (Doc. 150).  At a pretrial conference held on October 6, 2020, the Court denied Defendant's MIL 2 re: Inadmissibility of Personal Injury or Damages to Non-Parties, Including Members of Raygarr (Doc. 123); denied Defendant's MIL 3 re: Evidence Related to Coverage Investigation (Doc. 124); granted Defendant's MIL 5 to Preclude Plaintiff from Reading Excerpts of Policy Out of Context (Doc. 126), to the extent that Plaintiff is precluded from arguing that Section IV(2)(d) of the insurance policy at issue creates coverage; and denied Defendant's MIL 6 re: Inadmissibility of EMC's Financial Status (Doc. 127), provided that proper foundation is laid at trial for the SEC Form 10-Q at issue.  (Doc. 155.)  The Court took under advisement the remaining MILs (Docs. 122, 125, 128-134), as well as the Motion to Amend Joint Proposed Pretrial

1    Order (Doc. 150).

2         The Court addresses below all pending motions except those related to the parties'

3    expert witnesses, which will be resolved in a separate written order.

4    **I.    Background**

5         This case arises out of a flood that occurred during the evening of September 8-9,

6    2014, in a building, known as Building 842, owned by non-party Raytheon Missile

7    Systems ("Raytheon").  (Doc. 109 at 3; Doc. 118 at 3.)[1]  At the time of the flood, Raygarr

8    was the general contractor for a bathroom renovation project in the building.  (Doc. 109

9    at 3; Doc. 118 at 3.)   The flood was caused by the failure of PVC caps installed by

10   Raygarr's subcontractor, non-party Qualified Mechanical Contractors ("Qualified

11   Mechanical").  (Doc. 109 at 3; Doc. 118 at 3.)

12        Raygarr was insured at the time of the flood by a commercial general liability

13   policy (the "Policy") and an umbrella policy (the "Umbrella Policy") issued by EMC.

14   (Doc. 109 at 2; Doc. 118 at 2.)  Under the Policy and Umbrella Policy, EMC provided

15   insurance coverage to Raygarr, pursuant to specified terms, conditions, limitations, and

16   exclusions, for sums that Raygarr became "legally obligated to pay as damages" because

17   of property damage to which the insurance applied.  (Doc. 118 at 2; *see also* Doc. 84-1 at

18   35, 45.)  The Policy covered damages the insured was obligated to pay "by reason of the

19   assumption of liability in a contract or agreement" only if the contract was an insured

20   contract or if the insured would have had liability for the damages "in the absence of the

21   contract or agreement."  (Doc. 84-1 at 36, 46.)  However, Section IV(2)(d) of the Policy

22   (the "Voluntary Payments Provision") provided: "No insured will, except at the insured's

23   own cost, voluntarily make a payment, assume any obligation, or incur any expense,

24   other than for first aid, without our consent."  (Doc. 118 at 3; *see also* Doc. 84-1 at 37,

25   48.)

26        Upon being informed of the flood in Building 842, Raygarr contacted remediation

27   contractors Abracadabra Restoration ("Abracadabra") and ATI Restoration ("ATI").

28   _____

[1] All record citations herein refer to the page numbers generated by the Court's electronic filing system.

(Doc. 109 at 3; Doc. 118 at 3.)  Raygarr also reported the flood to its insurance agent, who in turn reported it to EMC.  (Doc. 109 at 3; Doc. 118 at 3.)  On September 10, 2014, EMC Senior Claims Adjuster Fabian Mireles ("Mireles") called Raygarr's owner, Ray Garrison, and spoke to him for 31 minutes.  (Doc. 109 at 3-4; Doc. 118 at 3-4.)  The parties dispute whether Mireles authorized and consented to Raygarr entering into remediation contracts with Abracadabra and ATI during that phone call.  (Doc. 109 at 4; Doc. 118 at 12.)

Abracadabra and ATI, in conjunction with Raygarr's own staff and other subcontractors, remediated the flood damage.  (Doc. 109 at 4; Doc. 118 at 4.)  On February 5, 2016, Raytheon sued Raygarr, Ray Garrison, and Qualified Mechanical in Pima County Superior Court for damages caused by the flood.  (Doc. 109 at 5; Doc. 118 at 4; Doc. 84-1 at 85-95.)  Among other claims, Raytheon asserted claims against Raygarr for breach of contract, negligence, and breach of the implied warranty of habitability, alleging that Raygarr negligently performed the Building 842 bathroom renovation work and was also contractually responsible for damages resulting from the flooding in Building 842.  (Doc. 84-1 at 88-91.)  Raygarr countersued for remediation costs, alleging that Raytheon's actions caused the extent of flood damages to become substantial, and that Raytheon required Raygarr to remediate the flood damage and then wrongfully failed to pay for the remediation.  (Doc. 109 at 5; Doc. 118 at 4; Doc. 84-1 at 2-20.)  EMC extended liability coverage, defended, and indemnified Raygarr in the Pima County Superior Court lawsuit.  (Doc. 109 at 5; Doc. 118 at 4.)  The claims and counterclaims between Raytheon, Qualified Mechanical, and Raygarr were resolved via confidential settlement agreements.  (Doc. 118 at 4; *see also* Docs. 105, 152, 153.)

Raygarr subsequently filed this litigation, alleging that EMC wrongfully failed to pay for the expenses Raygarr incurred remediating the flood damage.  (Doc. 1-4; Doc. 24.)  Plaintiff asserts claims for negligent misrepresentation, promissory estoppel, insurance bad faith, and breach of contract, seeking compensatory and punitive damages. (Doc. 24.)

1

2

**II.     Request for Additional Briefing Regarding Negligent Misrepresentation Claim**

3        At the pretrial conference held on October 6, 2020, Defendant sought leave to

4    brief an issue concerning a portion of this Court's September 4, 2018 Order (Doc. 22),

5    resolving Defendant's previously filed Motion to Dismiss (Doc. 7).  In that Motion to

6    Dismiss, Defendant argued that Plaintiff's negligent misrepresentation claim should be

7    dismissed because it is premised on a promise of future conduct and such a promise is

8    not, under Arizona law, considered a statement of fact capable of supporting a claim for

9    negligent misrepresentation.  (Doc. 7 at 6-7.)  Defendant also argued that Plaintiff's claim

10   alleging negligent claim handling should be dismissed because Arizona does not

11   recognize a cause of action for negligent claim handling.  (*Id.* at 7.)  The Court rejected

12   the former argument because Plaintiff's negligent misrepresentation claim is not

13   premised solely on a promise of future conduct; however, the Court agreed with the latter

14   argument and therefore dismissed Plaintiff's claim asserting negligent claim handling.

15   (Doc. 22 at 6-9.)

16       During the October 6, 2020 pretrial conference, Defendant argued that Plaintiff's

17   negligent misrepresentation claim, like Plaintiff's former claim alleging negligent claim

18   handling, is precluded under *Miel v. State Farm Mut. Auto. Ins. Co.*, 912 P.2d 1333 (Ariz.

19   App. 1995).  *But see Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682

20   P.2d 388 (Ariz. 1984).  Defendant did not raise that argument in its Motion to Dismiss,

21   nor did it file a timely motion seeking reconsideration of the Court's October 6, 2020

22   Order.[2]   "Absent good cause shown, any motion for reconsideration shall be filed no

23   later than fourteen (14) days after the date of the filing of the Order that is the subject of

24   the motion."  LRCiv 7.2(g)(2).[3]  More than two years have elapsed since the Court filed

_____

25   [2]  Furthermore, Defendant did not raise the argument in its Motion for Summary

26   Judgment, instead arguing in that Motion that the negligent misrepresentation claim
     failed because Plaintiff could not prove that Raygarr relied on any statement by EMC in

27   entering remediation contracts and could not prove that any alleged reliance caused
     Raygarr's damages.  (Doc. 83 at 9-11.)

28   [3]  Although Defendant denied, during the pretrial conference, that its new argument
     concerning Plaintiff's negligent misrepresentation claim constitutes a request for

1    its Order resolving Defendant's Motion to Dismiss, and Defendant has not shown good

2    cause for its delay in arguing that Plaintiff's negligent misrepresentation claim is not

3    cognizable under *Miel*.   Furthermore, a motion for reconsideration will ordinarily be

4    denied "absent a showing of manifest error or a showing of new legal authority that could

5    not have been brought to [the Court's] attention earlier with reasonable diligence."

6    LRCiv 7.2(g)(1).  Defendant argued in its Motion to Dismiss that *Miel* required dismissal

7    of Plaintiff's claim alleging negligent claim handling; Defendant did not argue in that

8    Motion that *Miel* also required dismissal of Plaintiff's negligent misrepresentation claim,

9    but it certainly could have with reasonable diligence.  The Court's failure to *sua sponte*

10   dismiss the negligent misrepresentation claim as precluded by *Miel* is not manifestly

11   erroneous so as to render a motion for reconsideration appropriate at this juncture.

12          Defendant is free to raise its argument concerning Plaintiff's negligent

13   misrepresentation claim at an appropriate time, such as in a motion for judgment as a

14   matter of law, but the Court will not allow briefing on the issue at this time.

15   **III.    Defendant's MIL 4 re: Plaintiff's Assertion that it was Liable for the**

16   **Negligence of Qualified Mechanical (Doc. 125)**

17          Defendant seeks an order precluding Plaintiff, pursuant to Fed. R. Civ. P. 37, from

18   arguing that it was liable for the negligence of its subcontractor, Qualified Mechanical.

19   (Doc. 125 at 1-2.)  Defendant argues that Plaintiff never disclosed a theory of vicarious

20   liability or indemnification on behalf of Qualified Mechanical and that there is no

21   evidentiary support for such a theory.  (*Id.* at 2-4.)

22          Plaintiff responds that Raygarr told EMC as early as September 2014 that Raygarr

23   was liable for the negligence of Qualified Mechanical, it sent EMC its Raytheon contract

24   confirming that it was so liable, and its liability for Qualified Mechanical's negligence

25   was mentioned repeatedly during discovery and in Plaintiff's summary judgment briefs.

26   (Doc. 143 at 1-7.)  Plaintiff argues that it is not asserting a claim for vicarious liability

27

28   reconsideration, the Court can think of no other way to characterize it, as Defendant is
     seeking leave to brief the issue of whether this Court should reconsider its decision not to
     dismiss Plaintiff's negligent misrepresentation claim.

that needed to be formally disclosed because the issue of vicarious liability is relevant only to refute Defendant's argument that EMC had no obligation to pay for remediation costs if Qualified Mechanical was legally liable.  (*Id.* at 7-8.)

This case was subject to the Mandatory Initial Discovery Pilot ("MIDP") program, which superseded the disclosures required by Federal Rule of Civil Procedure 26(a)(1). General Order 17-08, which implemented the MIDP, required parties to disclose the facts relevant to each of their claims or defenses and the legal theories upon which the claims or defenses were based.  (Doc. 4 at 7.)  Federal Rule of Civil Procedure 37(c)(1) provides that, if a party fails to provide information as required by Rule 26(a)(1), "the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless."  The Court also has the option of imposing other sanctions in addition to or instead of the sanction of preclusion of evidence.  Fed. R. Civ. P. 37(c)(1)(A)-(C).

Plaintiff is correct that its liability for the negligence of Qualified Mechanical is not a legal theory upon which any of its claims in this action is based, and thus is not a theory that needed to be disclosed under the MIDP.  The issue of Raygarr's liability for the negligence of Qualified Mechanical arose as a result of EMC arguing that the insurance policy at issue did not cover the remediation costs incurred by Raygarr because Qualified Mechanical, rather than Raygarr, was liable for the flood damages.  Plaintiff is not precluded under Rule 37(c)(1) from refuting this argument with evidence that it was liable for the negligence of Qualified Mechanical.

The Court also rejects Defendant's argument that there is no evidentiary support for Plaintiff's position that it was liable for the negligence of Qualified Mechanical. Plaintiff has identified general contractual conditions from Raytheon, dated March 12, 2008, which provide that contractors are responsible for the acts and omissions of their subcontractors.  (Doc. 143-1 at 6; *see also id.* at 8-9.)  During the pretrial conference, Plaintiff represented that Ray Garrison can provide foundation for the Raytheon contractual conditions by testifying that approved contractors for Raytheon obtain purchase orders for specific projects and must abide by Raytheon's general contractual

conditions as an addendum to each project's purchase order.  Defendant's MIL 4 will be denied.

## IV.   Plaintiff's MIL 1 re: Inadmissible Habit Testimony (Doc. 130)

Plaintiff seeks an order precluding Defendant from referring to Mireles's habit as an insurance adjuster on the ground that there has been no disclosure of prior claims handled by Mireles to establish a habitual response to accidents similar to the one at issue in this litigation, which required immediate remediation and involved lost productivity damages potentially in the millions of dollars.  (Doc. 130 at 1-5.)

Defendant argues that the testimony of Mireles and EMC's standard-of-care expert Steven Plitt constitutes admissible evidence of Mireles's habits pursuant to Federal Rule of Evidence 406, and that Plaintiff's MIL relies on too narrow an interpretation of Rule 406.  (Doc. 136 at 1-2.)  Defendant further argues that Mireles has handled hundreds of commercial liability claims, including hundreds of disputed-liability claims, and that he does not need to have handled claims identical to the one at issue in this case in order to establish habit/routine practices under Rule 406.  (*Id.* at 2-7)

Mireles averred in an affidavit that he has been adjusting commercial liability claims since 2006 and that he has initial consultations with insureds, such as the one he had with Ray Garrison on September 10, 2014, at least once per week.  (Doc. 130-1 at 2-3.)  He further averred that it is his routine practice to explain that a liability policy only covers what the insured is legally liable for and to not authorize an insured, on behalf of EMC, to incur remediation expenses when liability is still under investigation.  (*Id.*)  He also stated that he has never authorized an insured to incur a liability expense exceeding his level of authority.  (*Id.* at 4.)  At his deposition, Mireles testified that has no specific recollection of his conversations with Ray Garrison but that it is his habit to refuse to provide consent for an insured to sign remediation contracts when liability is still being determined.  (Doc. 136 at 12-13.)  Standard-of-care expert Plitt testified during his deposition that insurance adjusters develop routine practices that operate like muscle memory.  (Doc. 94 at 81.)

- 7 -

1    Rule 406 of the Federal Rules of Evidence provides: "Evidence of a person's habit
2  or an organization's routine practice may be admitted to prove that on a particular
3  occasion the person or organization acted in accordance with the habit or routine
4  practice."  Habit is a person's "regular response to a repeated specific situation."  Fed. R.
5  Evid. 406, advisory committee note.  To determine whether conduct constitutes habit,
6  courts consider: "(1) the degree to which the conduct is reflexive or semi-automatic as
7  opposed to volitional; (2) the specificity or particularity of the conduct; and (3) the
8  regularity or numerosity of the examples of the conduct."  *United States v. Angwin*, 271
9  F.3d 786, 799 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484
10  F.3d 1186 (9th Cir. 2007).  Habit evidence is admissible "regardless of whether it is
11  corroborated . . . ."  Fed. R. Evid. 406.

12    Mireles's testimony concerning his routine practices—including his testimony that
13  he explains to insureds that a liability policy covers only what the insured is legally liable
14  for; that he does not authorize insureds, on EMC's behalf, to incur remediation expenses
15  while liability is still under investigation; and that he does not authorized insureds to
16  incur liability expenses exceeding his level of authority—is admissible under Rule 406.
17  The evidence is sufficient to show that Mireles has developed a semi-automatic response
18  to situations sufficiently similar to the one at issue in this litigation, based on his years of
19  experience handling hundreds of commercial liability claims.  Plaintiff has not identified
20  any authority supporting its position that Mireles's habit testimony must be corroborated
21  by claim file notes regarding other accidents, and the position is contrary to the express
22  language of Rule 406, which provides that habit evidence is admissible regardless of
23  whether it is corroborated.  Plaintiff's MIL 1 will be denied.

24  **V.    Plaintiff's MIL 3 re: EMC's Attempt to Contest Coverage and Try a Case**
25  **Within a Case (Doc. 132)**

26    The parties listed in their Joint Proposed Pretrial Order the following as contested
27  legal issues 6-10:

28  . . . .

- 8 -

(6) whether Raytheon was negligent and caused the damages claimed by Raygarr;

(7) whether Raygarr voluntarily assumed obligations related to the remediation of the flood at Raytheon in breach of the conditions of the insurance contract;

(8) whether Raygarr was legally liable for the flood-related damages at Raytheon;

(9) whether the remediation expenses were covered by the EMC insurance policy; and

(10) whether Raygarr breached the terms of the insurance policy.

(Doc. 118 at 22-25.)   Plaintiff disputes the relevance of these issues, asserting that coverage is not at issue in this matter and that Defendant should be precluded under Rules 401 and 403 of the Federal Rules of Evidence from presenting evidence disputing coverage.  (Doc. 118 at 22-25; Doc. 132 at 2-5.)  Plaintiff argues that whether the Policy covered the loss or not is irrelevant because all of Raygarr's claims—including its negligent misrepresentation, promissory estoppel, and insurance bad faith claims—are based on the misrepresentations of EMC.  (Doc. 132 at 2-3.)  According to Plaintiff, not even its breach of contract claim is for EMC's failure to cover the loss; rather, it is for "for EMC's violation of Section IV(2)(d) [the Voluntary Payments Provision] of the Policy."  (*Id.* at 3.)

Defendant responds that the facts and legal theories that Plaintiff seeks to preclude are all directly relevant to the causes of action asserted in this case.  (Doc. 138 at 1-2.) Defendant argues that evidence of whether the remediation expenses incurred by Raygarr were covered by the Policy is clearly relevant to Plaintiff's claim that EMC should have paid the remediation expenses and is liable for failing to do so.  (*Id.* at 2, 4-6.)  Defendant further argues that it has identified Raytheon as a non-party at fault who is liable for the damages incurred by Raygarr.  (*Id.* at 2-4.)  Finally, Defendant argues that the issue of whether Raygarr was legally liable for the flood damages is relevant because it affects the credibility of Mireles's testimony and because the Policy is a liability policy that provides indemnification coverage only for claims for property damage for which the insured is legally liable.  (*Id.* at 2, 4-6.)

Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if "it

1  has any tendency to make a fact" that "is of consequence in determining the action"
2  "more or less probable than it would be without the evidence."  Relevant evidence is
3  generally admissible, unless otherwise provided by the United States Constitution, federal
4  statutes, the Federal Rules of Civil Procedure, or other rules prescribed by the Supreme
5  Court.  Fed. R. Evid. 402.  However, the Court "may exclude relevant evidence if its
6  probative value is substantially outweighed by a danger of one or more of the following:
7  undue prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or
8  needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

9      As an initial matter, Plaintiff's characterization of its breach of contract claim
10  (Doc. 132 at 3) is contrary to the Court's February 26, 2020 Order resolving the parties'
11  Motions for Summary Judgment ("Summary Judgment Order") (Doc. 109).   In the
12  Summary Judgment Order, the Court found that Section IV(2)(d) of the Policy—the
13  Voluntary Payments Provision—"is an exclusionary condition that does not create
14  coverage where none exists."   (Doc. 109 at 21.)   Because the Voluntary Payments
15  Provision does not create coverage where none exists but, instead, is an exclusionary
16  condition imposing a duty on the insured rather than the insurer, Plaintiff's breach of
17  contract claim cannot rest on an alleged breach by EMC of the Voluntary Payments
18  Provision.[4]  The Court declined to grant summary judgment to Defendant on the breach
19  of contract claim not because there is evidence that EMC breached the Voluntary
20  Payments Provision but because there is evidence from which a reasonable juror could
21  find that EMC breached the Policy's provisions to insure against property damage for
22  which the insured is obligated to pay, including property damage "for which the insured

23  _____

24  [4] At the pretrial conference, Plaintiff averred that it did not take the position that the
   Voluntary Payments Provision creates coverage; however, Plaintiff's counsel argued that
25  Plaintiff's breach of contract claim nevertheless relies upon the Voluntary Payments
   Provision because, by giving approval and consent for Raygarr to enter into remediation
26  contracts, EMC affirmed coverage, and Raygarr relied upon that representation.  That
   argument confuses Plaintiff's breach of contract claim with Plaintiff's other claims, such
27  as its negligent misrepresentation and promissory estoppel claims.  Plaintiff did not allege
   in its Amended Complaint that EMC breached an oral agreement to pay remediation
28  costs; it alleged that EMC breached the Policy.  Alleged misrepresentations by EMC may
   support Plaintiff's other causes of action, but they do not support Plaintiff's breach of
   contract claim.

- 10 -

is obligated to pay . . . by reason of the assumption of liability in a contract or agreement," so long as the insured would have had liability for the damage "in the absence of the contract or agreement." (*Id.* at 22.)

If Plaintiff failed to obtain EMC's authorization to enter into remediation contracts, then the Voluntary Payments Provision precludes coverage for costs incurred pursuant to those contracts, and EMC's failure to pay those costs did not breach the terms of the Policy.[5]  Accordingly, contested legal issues (7) and (10) of the parties' Joint Proposed Pretrial Order, and contested legal issue (9) to the extent it pertains to whether the remediation expenses are not covered because they are barred by the Voluntary Payments Provision, are relevant to Plaintiff's breach of contract claim.[6]  The issues are also relevant to Plaintiff's insurance bad faith claim, which requires proof that an insurer intentionally denied or failed to process or pay a claim without a reasonable basis.  *See Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279 (Ariz. 2000).  The probative value of evidence related to these legal issues is not outweighed by any Rule 403 concerns.  Accordingly, Plaintiff's MIL 3 will be denied to the extent it seeks to exclude evidence concerning contested legal issues (7) and (10), and contested legal issue (9) to the extent it relates to whether the remediation expenses are barred by the Voluntary Payments Provision.

Turning to contested legal issues (6) and (8), the Court will deny Plaintiff's MIL 3 to the extent it seeks to preclude evidence that it *appeared*, at the time Raygarr entered into remediation contracts, that Raytheon and/or Qualified Mechanical were legally liable for the flood damages.  Such evidence is relevant because it has some tendency to make more probable EMC's position that it did not authorize Raygarr to incur remediation expenses because liability was still being determined.  However, the Court will take under advisement Plaintiff's MIL 3 to the extent it seeks to preclude evidence that the

---

[5] This is true even if EMC represented to Raygarr that the remediation costs were covered. *See* footnote 3, *supra*.

[6] The Court also notes that the issue of whether Raygarr violated the Voluntary Payments Provision by assuming remediation expenses without EMC's authorization is merely the flip side of the issue of whether EMC authorized and consented to Raygarr entering into remediation contracts, and both parties agree that the latter issue is relevant.

remediation expenses were not covered by the Policy because Raygarr was not legally liable for the flood damage.

This is an unusual case, in that Plaintiff is suing Defendant for flood remediation costs after having already sued and recovered from Raytheon for the flood remediation costs.  Furthermore, Defendant is arguing that Plaintiff was not liable for the flood damage after having defended Plaintiff in prior litigation concerning liability for the flood damage and after having indemnified Plaintiff for flood damage that Plaintiff was legally obligated to pay.  To the extent that Raygarr incurred remediation expenses in excess of the amount it recovered from Raytheon in the prior litigation, it appears that those expenses may properly be characterized as flood damages for which Raygarr was legally liable.  It also appears that Raygarr may be barred from obtaining from EMC reimbursement for remediation expenses for which it already received reimbursement from Raytheon.  However, the parties have not adequately briefed the effect of the prior litigation on the positions they've taken in this litigation, and thus the Court cannot conclusively determine these issues.  Accordingly, the Court will take the remainder of Plaintiff's MIL 3 under advisement pending supplemental briefing.  The parties' supplemental briefs shall address the effect of the prior Pima County Superior Court litigation on the issues in the present lawsuit, including: (1) whether Plaintiff is barred from recovering in this litigation damages arising from remediation expenses for which it already recovered from Raytheon in the prior litigation; and (2) whether the doctrine of collateral estoppel/issue preclusion, or any other legal doctrine, precludes Defendant from arguing that Raygarr was not legally liable for remediation expenses in excess of those it recovered from Raytheon in the prior litigation.

**VI.    Plaintiff's MIL 4 re: Claims Asserted by Raygarr in the Raytheon Matter (Doc. 133)**

Plaintiff argues that Defendant should be precluded under Federal Rule of Evidence 403 from presenting Raygarr's pleadings in the prior litigation with Raytheon. (Doc. 133 at 1-3.)  Plaintiff argues that the resolved issues between Raygarr and

Raytheon are irrelevant to the issues in the present case and would only serve to confuse and distract the jury.  (*Id.*)  Defendant responds that the allegations in the underlying litigation between Raygarr and Raytheon are admissible as party-opponent admissions pursuant to Federal Rule of Evidence 801 and are directly relevant to the issue of whether Raytheon or EMC caused Raygarr's claimed damages.  (Doc. 139 at 1-4.)

The Court agrees with Defendant that Raygarr's pleadings in the prior litigation are not hearsay because they constitute opposing-party statements under Federal Rule of Evidence 801(d)(2).  However, the Court will take Plaintiff's MIL 4 under advisement pending the parties' supplemental briefing concerning the effects of the prior litigation on the issues in this case, as that supplemental briefing may affect the Court's analysis under Rules 401-403 of the Federal Rules of Evidence.

**VII.   Defendant's Motion to Amend Joint Proposed Pretrial Order (Doc. 150)**

Defendant seeks to amend the Joint Proposed Pretrial Order to add an express reference to Raytheon as a non-party at fault and to specify that EMC will ask the jury to allocate fault to Raytheon on the jury form.  (Doc. 150 at 1-2; *see also* Doc. 150-1 at 24.) Defendant argues that it timely designated Raytheon as a non-party at fault on November 9, 2018, and that it set forth the bases for that designation in the Joint Proposed Pretrial Order, merely omitting the term of art "non-party at fault."  (Doc. 150 at 2; *see also* Doc. 34.)

Plaintiff urges the Court to deny Defendant's Motion and to strike Defendant's non-party at fault allegation (1) as untimely; (2) as irrelevant to Plaintiff's claims in this lawsuit; and (3) as legally impermissible, because non-party at fault applies only in actions for personal injury, property damage, or wrongful death pursuant to  A.R.S. § 12-2506(A).  (Doc. 156 at 1-4.)

A notice of non-party at fault is due no later than 150 days after a party files its answer.  Ariz. R. Civ. P. 26(b)(5).[7]  Defendant filed its Answer (Doc. 6) to Plaintiff's

---

[7] Defendant does not dispute that the Arizona non-party at fault rule, Arizona Rule of Civil Procedure 26(b)(5), is substantive rather than procedural and thus applies in federal court.  (Doc. 158 at 4 n.2 (citing *Wester v. Crown Controls Corp.*, 974 F. Supp. 1284, 1288 (D. Ariz. 1996).)

original Complaint on May 29, 2018, the same day that it filed a Motion to Dismiss (Doc. 7). Defendant filed its notice of non-party at fault on November 9, 2018. (Doc. 34.) Defendant argues in its Reply in support of its Motion to Amend Joint Proposed Pretrial Order that its Answer to the original Complaint was prematurely filed out of an abundance of caution, that Defendant was not required to file an answer until the resolution of its Motion to Dismiss, and that the notice of non-party at fault was filed within 150 days of the filing of Defendant's Answer to the Amended Complaint after the resolution of Defendant's Motion to Dismiss. (Doc. 158 at 2.) The Court disagrees that Defendant's Answer to Plaintiff's original Complaint was prematurely filed. At the time this lawsuit was filed, the MIDP required parties to file answers even if they had filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss. (Doc. 4 at 5.) Accordingly, Defendant's notice of non-party at fault was due within 150 days of the filing of Defendant's Answer to Plaintiff's original Complaint, and it was filed approximately two weeks late. (Doc. 34.)

"The trier of fact may not allocate any percentage of fault to a nonparty who is not disclosed in accordance with" Rule 26(b)(5) of the Arizona Rules of Civil Procedure, except on the parties' stipulation or "on motion showing good cause, reasonable diligence, and lack of unfair prejudice to all other parties." Ariz. R. Crim. P. 26(b)(5). Defendant has satisfied its burden of showing good cause, reasonable diligence, and lack of unfair prejudice. The MIDP's requirement of filing an answer during the pendency of a motion to dismiss was altered over the course of the MIDP program, and it differed from the requirements of the Federal Rules of Civil Procedure. Under the circumstances, confusion concerning whether the 150-day deadline began to run from the filing of Defendant's original Answer or the filing of its Answer to Plaintiff's Amended Complaint was reasonable. Furthermore, Defendant's MIDP Responses were filed 30 days after its Answer to Plaintiff's original Complaint, and Defendant avers they alerted Plaintiff to the non-party at fault issue. (Doc. 15; Doc. 158 at 3.) Plaintiff was aware during discovery that Defendant took the position that Raytheon was liable for the flood

damage, and there is no evidence of any unfair prejudice to Plaintiff.  The fact that Plaintiff failed to file a motion to strike Defendant's notice of non-party at fault and waited approximately two years to raise the timeliness issue underscores the lack of unfair prejudice.

Although the Court rejects Plaintiff's timeliness argument, it will take Defendant's Motion to Amend Joint Proposed Pretrial Order under advisement pending the parties' supplemental briefing concerning the effect of the prior litigation on the issues in this lawsuit, because if Plaintiff is precluded from obtaining in this litigation damages for remediation expenses that it already recovered from Raytheon in the prior litigation, then there may be no need for the jury in this case to determine Raytheon's fault for the flood damages.

**IT IS ORDERED** that Defendant's Motion in Limine 4 re: Plaintiff's Assertion that it was Liable for the Negligence of Qualified Mechanical (Doc. 125) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine 1 re: Inadmissible Habit Testimony (Doc. 130) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine 3 (Doc. 132) and Motion in Limine 4 (Doc. 133) are **partially denied and partially taken under advisement**, as discussed above.

**IT IS FURTHER ORDERED** that Defendant's Motion to Amend Joint Proposed Pretrial Order (Doc. 150) is **taken under advisement**, as discussed above.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS FURTHER ORDERED** that, within **fourteen (14) days** of the filing of this Order, the parties shall file supplemental briefs concerning the effect of the prior litigation on the issues in this lawsuit, as outlined above.

Dated this 9th day of December, 2020.


_____
Honorable Rosemary Márquez
United States District Judge